[L.A. No. 30734. Mar. 28, 1979.]

DAVID I. KITSIS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Hertzberg, Kaplan & Koslow, David S. Koslow, Harrison W. Hertzberg, Ball, Hunt, Hart, Brown & Baerwitz, Robert E. Aitken and Arthur D. Cohen for Petitioner.

Herbert M. Rosenthal and Stuart A. Forsyth for Respondent.

**OPINION**

**THE COURT.**—Proceeding to review recommendation of the Disciplinary Board of the State Bar (Bus. & Prof. Code, § 6083, subd. (a)) that petitioner be disbarred from the practice of law.

Petitioner is charged with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6067, 6068, 6103); committing acts involving

moral turpitude (Bus. & Prof. Code, § 6106); and violating former rules 2 and 3 of the Rules of Professional Conduct. Both rules 2 and 3 prohibited solicitation of professional employment.[1] (See West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076.)

Petitioner was admitted to practice in 1963. In 1972 he was privately reproved for violation of former rule 3a (payment of medical or other personal expenses incurred by a client).

### THE FACTS

Petitioner has stipulated to the following facts:

From mid-1971 to mid-1974 petitioner employed three laypersons to solicit professional employment for him, and offered to pay three others for referrals of personal injury claimants.

April Turner was employed regularly by petitioner. Equipped with a radio adapted to police communication channels, Turner drove about the Los Angeles area, listened to police calls and went to sites of accidents. During her employment Turner recommended petitioner's services to accident victims on an estimated 200 occasions. As many as 150 of such victims became clients of petitioner as a result of her efforts.

Turner's duties also included visits to automobile body repair shops. On one occasion Turner informed John Guilmet, the owner, and Howard Glickstein, the manager of such a shop, that petitioner would pay $50 for each client they referred to him. Subsequently petitioner personally repeated the offer. When Glickstein referred a couple who had been in an automobile accident to petitioner, petitioner paid Glickstein $50.

Turner also approached patients in hospital rooms to offer petitioner's services. She was often accompanied by Esther Gonzalez who was paid by petitioner to serve as an interpreter for patients who spoke only Spanish. Only a few clients were successfully solicited in this manner. In spring 1974, shortly after newspaper reports appeared concerning solicitation of patients at County U.S.C. Medical Center, Turner approached and asked petitioner whether solicitations she had made at the hospital

---

[1]Former rule 2 provided in pertinent part: "A member of the State Bar shall not solicit professional employment by . . . [¶] (1) Volunteering counsel or advice . . . ."

Former rule 3 provided in pertinent part: "A member of the State Bar shall not employ another to solicit or obtain, or remunerate another for soliciting or obtaining, professional employment for him . . . ."

and at accident scenes were illegal. Petitioner replied such solicitations were merely unethical—not illegal.

Petitioner also employed Larry Young, a former employee of County U.S.C. Medical Center, to contact hospitals, auto body repair shops and an insurance company to obtain the names of accident victims and likely claimants for purposes of later solicitation. Through Young's contacts petitioner was supplied with a daily list of automobile accident victims admitted to County U.S.C. Medical Center. After petitioner and Young approached Charles McClinton, a security guard at Martin Luther King Hospital, and offered to pay for referrals of auto accident victims, McClinton reported the offer to the State Bar and the Los Angeles District Attorney.

Investigation by the district attorney led to the filing of a misdemeanor charge against petitioner for solicitation contrary to Business and Professions Code section 6152 (unlawful to solicit attorney business in hospitals). Petitioner pleaded guilty to the charge and a judgment of conviction is now final.[2] The instant proceedings were commenced in 1974 when a local administrative committee issued three notices to show cause, alleging seven counts of employment solicitation. On March 3, 1976, the committee found petitioner culpable on six counts of solicitation and recommended a suspension of five years stayed on condition he actually be suspended for one year. A "Statement of the Examiner for the State Bar" supported committee findings but recommended as appropriate discipline a suspension of five years stayed on condition petitioner actually be suspended for two and one-half years.

On July 29, 1976, petitioner filed a statement in opposition to the report and sought a new hearing or, in the alternative, to augment the record with additional information. He supported his application with a personal affidavit. Since statements in the affidavit were in direct contradiction to his earlier stipulated admissions, the examiner submitted a reply, stating petitioner's declaration was false and recommending petitioner be disbarred. Petitioner next submitted a document purporting to withdraw his July 29, filings.

On October 8, 1976, the disciplinary board, after oral argument by petitioner, adopted the committee's findings and added a further finding petitioner had willfully filed a false declaration. The board unanimously

---

[2] On June 5, 1978, petitioner's writ of certiorari was denied by the United States Supreme Court.

recommended disbarment. On February 23, 1977, we issued a writ of review but on June 9, 1977, granted the board's request for remand.[3] On remand the board set aside its independent finding, presumably on the ground petitioner had not been afforded adequate notice and opportunity to be heard on the issue of the alleged false declaration. On July 22, the board recommended disbarment on the basis of committee findings as adopted by the board. It is that recommendation which is now before us.

## DISPOSITION

■ Petitioner first contends enforcement of rules prohibiting attorney solicitation violates the First Amendment of the United States Constitution and article I, section 2 of the California Constitution, in that such regulation limits flow of information regarding legal services and restricts petitioner's freedom of expression. He claims his solicitation activities are thus protected by the right of free speech and are not subject to discipline.

The recent United States Supreme Court decision in *Ohralik* v. *Ohio State Bar Assn.* (1978) 436 U.S. 447 [56 L.Ed.2d 444, 98 S.Ct. 1912], deals directly with the instant question of the permissible scope of regulation of in-person client solicitation by attorneys or their agents or "runners," and is controlling in the instant case.

In *Ohralik* the Supreme Court held a state bar may constitutionally discipline a lawyer for soliciting clients in person for pecuniary gain. The state does not lack power to regulate commercial activity, deemed contrary to public welfare, simply because speech is a component of such activity. The court stated that "in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. . . . The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual. . . . In-person solicitation is as likely as not to discourage persons needing counsel from engaging in a critical comparison of the 'availability, nature, and prices' of legal services. . . ." (*Id.,* at pp. 457-458 [56 L.Ed.2d at p. 454].)

---

[3]Our order filed July 9, 1977, reads: "The above entitled proceeding is referred to the State Bar of California for further hearings and recommendations. [¶] Disposition of this review proceeding is deferred pending further report and recommendation of [the State Bar]."

The court held the state has a compelling interest in promulgating disciplinary rules in order to "reduce the likelihood of overreaching and the exertion of undue influence on lay persons; to protect the privacy of individuals; and to avoid situations where the lawyer's exercise of judgment on behalf of the client will be clouded by his own pecuniary self-interest." (*Id.,* at p. 461 [56 L.Ed.2d at p. 457].)

In response to a further contention that regulation of in-person solicitation would inhibit dissemination of legal information—or in other words, restrict an attorney's freedom of expression—the court noted such regulation does not "prohibit a lawyer from giving unsolicited legal advice; it [simply] proscribes the acceptance of employment resulting from such advice." (*Id.,* at p. 458 [56 L.Ed.2d at p. 455].)

Petitioner acknowledges he has committed "willful acts of solicitation." Furthermore, the type of solicitation engaged in by petitioner—contacting victims at the sites of accidents and in hospital rooms—is the specific type *Ohralik* holds may be curtailed by state regulation and discipline.

Petitioner next contends the disciplinary proceedings denied him due process. He alleges board members had a pecuniary interest in the proceedings, as they are all competing attorneys damaged by petitioner's successful solicitation of clients. He also argues the concentration of the complainant, prosecutor and adjudicator functions in one body gives the "appearance of unfairness in failing to provide any check on abuses of power." We considered these contentions in *Schullman* v. *State Bar* (1973) 10 Cal.3d 526 [111 Cal.Rptr. 161, 516 P.2d 865] and *Brotsky* v. *State Bar* (1962) 57 Cal.2d 287 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310].

In *Schullman* we stated: "[Petitioner] charges that members of the State Bar—because of their membership—are incapable of impartiality in his case. Mere membership in the bar, however, is no sign of bias, nor does it indicate, without additional proof, that a person is incapable of fairly evaluating evidence. [Citations.] If anything, the opposite is true." (*Schullman* v. *State Bar, supra,* 10 Cal.3d 526, 537.) Petitioner presents no specific proof of prejudice by a board member.

In support of his argument of denial of due process by the concentration of complainant, prosecutor and adjudicator in one body, petitioner cites a footnote in *Pickering* v. *Board of Education* (1968) 391 U.S. 563 [20 L.Ed.2d 811, 88 S.Ct. 291]. In that case the Supreme Court

indicated its concern over the multiple functions of a board of education as trier of fact and prosecutor. However, petitioner's reliance on *Pickering,* is misplaced. In that case the board both accused a teacher and made findings of fact regarding such teacher's conduct. In the instant proceedings the three notices to show cause were issued by three different local administrative committees; the charges were presented on behalf of the State Bar by an independent examiner; the findings of fact were made by a fourth and different local administrative committee and were independently reviewed by the disciplinary board. The board of education in *Pickering,* moreover, made findings of fact based on evidence before it and thus exercised discretion in resolving conflicts in the evidence. In the instant case petitioner stipulated to facts on which the local administrative committee's "findings" are based. Finally, the state court in *Pickering* merely searched for substantial evidence in support of the board's findings and did not independently review the record. In the instant proceeding we make independent findings of fact on the record before us. As to disciplinary matters, the board proceeds merely as an arm of this court.  ▮  It is within the authority of this court to review the record and exercise our independent judgment not only on the weight and sufficiency of the evidence but also on the discipline to be imposed. (See *Brotsky* v. *State Bar, supra,* 57 Cal.2d 287, 300.)

▮  Petitioner next contends there is insufficient evidence in support of findings he violated his oath and duties as an attorney and committed acts of moral turpitude. It is the duty of an attorney to support the laws of California. (Bus. & Prof. Code, § 6068, subd. (a).) Petitioner pleaded guilty to a charge of solicitation. This alone is a sufficient basis for finding petitioner violated his oath and duties as an attorney (see *Christopher* v. *State Bar* (1945) 26 Cal.3d 663, 672 [161 P.2d 1]), and constitutes cause for petitioner's suspension or disbarment. (Bus. & Prof. Code, § 6103.) He has additionally stipulated to a long and continuous course of unlawful solicitation.

▮  "The definitions of 'act involving moral turpitude' are frequent and repetitious. The simplest is that an act 'contrary to honesty and good morals is conduct involving moral turpitude.' (*Stanford* v. *State Bar* (1940) 15 Cal.2d 721, 727 [104 P.2d 635].)" (1 Witkin, Cal. Procedure (2d ed. 1970) at p. 205.) This broad definition is intended to give the State Bar and this court broad discretion in determining what acts will be deemed to involve moral turpitude and in applying the statutory provisions concerned with such acts. (*Id.*)

A deliberate and knowing violation by an attorney of his oath or of the duties set forth in Business and Professions Code section 6068[4] usually involves moral turpitude. (1 Witkin, Cal. Procedure, p. 205.) Additionally, "[a]n attorney's practice of deceit involves moral turpitude." (*Segretti v. State Bar* (1976) 15 Cal.3d 878, 888 [126 Cal.Rptr. 793, 544 P.2d 929].) ■ Petitioner has both deliberately violated section 6068, and, by misleading April Turner into believing her solicitation activities on his behalf were not illegal, but unethical only, petitioner has also perpetrated a deception involving moral turpitude.

■ Petitioner finally contends the board's recommendation of disbarment is excessive and thus denies him the equal protection of the law.

Suspension has been the usual discipline imposed for using runners and cappers to solicit professional employment (e.g., *Urbano v. State Bar* (1977) 19 Cal.3d 16 [136 Cal.Rptr. 572, 560 P.2d 1]; *Geffen v. State Bar* (1975) 14 Cal.3d 843 [122 Cal.Rptr. 865, 537 P.2d 1225]; *Younger v. State Bar* (1974) 12 Cal.3d 274 [113 Cal.Rptr. 829, 522 P.2d 5]), although we have disbarred attorneys for solicitation when the attorneys also committed other acts involving moral turpitude and dishonesty (*Best v. State Bar* (1962) 57 Cal.2d 633 [21 Cal.Rptr. 589, 371 P.2d 325]; *Waterman v. State Bar* (1942) 14 Cal.2d 224 [93 P.2d 95]).

Petitioner has acknowledged his willful and gross solicitations—over 200 persons—through runners and on his own behalf. In most instances he was successful in obtaining the person solicited as a client. He directed his solicitations to persons who were the victims of ill fortune, finding them in car repair shops, sites of accidents and—most disturbing of all—hospitals. He additionally misled one of his cappers to believe she could continue her solicitations because they were "legal," at the same time acknowledging they were nevertheless "unethical," a circumstance

---

[4]Section 6068 provides: "It is the duty of an attorney: [¶] (a) To support the Constitution and laws of the United States and of this State. [¶] (b) To maintain the respect due to the courts of justice and judicial officers. [¶] (c) To counsel or maintain such actions, proceedings or defenses only as appear to him legal or just, except the defense of a person charged with a public offense. [¶] (d) To employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law. [¶] (e) To maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client. [¶] (f) To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he is charged. [¶] (g) Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest. [¶] (h) Never to reject, for any consideration personal to himself, the cause of the defenseless or the oppressed."

which did not deter petitioner. It is thus apparent petitioner's continued course of gross misconduct warrants more serious discipline than would instances of isolated acts of solicitation.

In mitigation petitioner presents 19 letters of favorable character reference from fellow attorneys, friends and clients. While most of the letters refer to the solicitation charges against petitioner, we note none of the authors express an awareness of the magnitude of the solicitations.

Petitioner claims, as a further mitigating factor, he has not damaged his clients. ■ However, it is the public and the profession which suffer the greater damage from solicitation practices. "[Because] the State's interest in averting harm by prohibiting solicitation in circumstances where it is likely to occur, the absence of explicit proof or findings of harm or injury is immaterial." (*Ohralik v. Ohio State Bar Association, supra,* 436 U.S. 447, 468 [56 L.Ed.2d 444, 461].)

■ Petitioner is burdened with showing the board's recommendation of discipline is erroneous or unlawful. (*Toll v. State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) He has failed to do so.

It is ordered that David I. Kitsis be disbarred from the practice of law in this state, and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion. It is also ordered that he comply with the provisions of rule 955(a), California Rules of Court within 30 days of the effective date of this order and that he file an affidavit with the clerk of this court as provided in subdivision (c) of the rule within 60 days of the effective date of the order showing his compliance with said order.

Bird, C. J., and Newman, J., concurred in the result.