[L.A. No. 31707. July 7, 1983.]

JOHN McDONALD WREN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

John McDonald Wren, in pro. per., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., Gael T. Infande and Antonia Darling for Respondent.

**OPINION**

**THE COURT.**—The Review Department of the State Bar Court recommends that petitioner, John McDonald Wren, be suspended from the practice of law for two years, that execution of the suspension be stayed and that Wren be placed on probation for two years with certain conditions, including actual suspension from the practice of law for the first forty-five days of the probationary period.[1] This court concurs in the review department's recommendation.

---

[1] The conditions of probation recommended by the review department are as follows:

"RESOLVED . . .

"1. That during the first forty-five (45) days of said period of probation he shall be suspended from the practice of law in the State of California;

"2. That during the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California;

"3. That Respondent shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. Respondent shall promptly review the terms and conditions of his probation with the probation monitor to establish a manner and schedule of compliance. During the period of probation, Respondent shall furnish such reports

## I.

On May 29, 1981, a notice to show cause was served upon petitioner. The notice charged petitioner with violating his oath and duties as an attorney at law (Bus. & Prof. Code, §§ 6103, 6067, 6068), violating Business and Professions Code section 6128,[2] willfully violating rule 6-101[3] of the

---

concerning his compliance as may be requested by the probation monitor. Respondent shall cooperate fully with the probation monitor to enable him/her to discharge his/her duties pursuant to Rule 611, Rules of Procedure of the State Bar;

"4. That during the period of probation, he shall report not later than January 10, April 10, July 10, and October 10 of each year or part thereof during which the probation is in effect, in writing, to the Los Angeles Office of the State Bar Court, State Bar of California, which report shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, he shall file said report on the due date next following the due date after said effective date):

"(a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation; and

"(b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California during said period;

"(c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph certifying to the matters set forth in subparagraph (b) hereof;

"5. That, except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, he shall answer fully, promptly and truthfully to the Presiding Referee of the State Bar Court or his designee at the respondent's office or an office of the State Bar (provided, however, that nothing herein shall prohibit the respondent and the Presiding Referee from fixing another place by agreement), any inquiry or inquiries directed to him personally or in writing by said Presiding Referee or his designee relating to whether respondent is complying or has complied with these terms of probation;

"6. That the period of probation shall commence as of the date on which the order of the Supreme Court herein becomes effective;

"7. That at the expiration of said probation period, if he has complied with the terms of probation, said order of the Supreme Court suspending respondent from the practice of law for a period of two (2) years shall be satisfied and the suspension shall be terminated; and it is

"FURTHER RESOLVED that Respondent shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year from the date upon which the order of the Supreme Court herein becomes effective[.]"

[2] All references will be to the Business and Professions Code unless otherwise stated. The text of section 6128 reads as follows:

"Every attorney is guilty of a misdemeanor who either:

"(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party.

"(b) Willfully delays his client's suit with a view to his own gain.

"(c) Willfully receives any money or allowance for or on account of any money which he has not laid out or become answerable for.

"Any violation of the provisions of this section is punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both."

[3] The text of this rule reads as follows:

"A member of the State Bar shall not willfully or habitually

"(1) Perform legal services for a client or clients if he knows or reasonably should know

Rules of Professional Conduct and committing acts involving moral turpitude and dishonesty within the meaning of section 6106.

One count of professional misconduct was alleged involving petitioner's representation of Michael M. in a repossession action. With respect to this matter, it was charged and found to be true that petitioner (1) willfully failed and refused to communicate with his client regarding the action for which he was retained, (2) knowingly misrepresented the status of the case to his client, (3) willfully failed and refused to perform all of the services for which he had been retained, and (4) willfully failed to use reasonable diligence to accomplish with reasonable speed the purpose for which he had been employed.

Following an investigation by the State Bar and proceedings before a hearing panel and the Review Department of the State Bar Court, petitioner was found to have attempted to mislead the State Bar by giving false and misleading testimony before the hearing panel.

## II.

Petitioner has been a member of the State Bar since January cf 1961. He has no prior disciplinary record.

In November of 1977, Michael M. retained petitioner to represent him in a dispute concerning a mobilehome which Mr. M. had sold to Ms. H. Apparently, Ms. H. was in default on the monthly payments for her purchase of the home. Initially, petitioner was hired only to write a letter to Ms. H. seeking repossession of the home or back payments due. Mr. M. paid petitioner a small fee for this service and petitioner sent the letter as promised.

Subsequently, when the letter produced no results, petitioner and Mr. M. agreed upon an additional fee of $175 to compensate petitioner for bringing suit to repossess the mobilehome. Mr. M. paid the fee in installments which were completed in late December of 1977. Petitioner informed his client

that he does not possess the learning and skill ordinarily possessed by lawyers in good standing who perform, but do not specialize in, similar services practicing in the same or similar locality and under similar circumstances unless he associates or, where appropriate, professionally consults another lawyer who he reasonably believes does possess the requisite learning and skill;

"(2) Fail to use reasonable diligence and his best judgment in the exercise of his skill and in the application of his learning in an effort to accomplish, with reasonable speed, the purpose for which he is employed.

"The good faith of an attorney is a matter to be considered in determining whether acts done through ignorance or mistake warrant imposition of discipline under Rule 6-101."

that he would have to furnish petitioner with the promissory note and the security agreement for the purchase of the mobilehome before petitioner could file suit against Ms. H. According to petitioner's testimony, he received these documents in the spring of 1978.

From February of 1978 to June of 1978, petitioner and his client briefly met on two occasions. The first occurred on or about February 19, 1978, when Mr. M. appeared at petitioner's Torrance office without an appointment.[4] Having been told by the receptionist that petitioner was in court, Mr. M. checked the phone book and found that petitioner also had an office in Redondo Beach. He proceeded to that office and encountered petitioner by chance in the reception area. Mr. M. testified that petitioner became rude and angry with him for appearing unannounced at the office and called him a nuisance. Petitioner maintained that he was simply being "firm" with his client. In any event, Mr. M. was unable to obtain any substantive information concerning the progress of his case from petitioner.

On June 15, 1978, petitioner and his client met by appointment. Petitioner informed his client only that he was working on a court date.

Aside from these two meetings, Mr. M. and petitioner had no other contact until May of 1979. Mr. M. testified that he repeatedly telephoned and wrote to petitioner seeking information about his case. However, petitioner neither returned his phone calls nor answered his correspondence. Petitioner testified he did not know whether the correspondence had been answered and that he could not verify whether the phone calls had been received or returned because the Attorneys Legal Clinic office kept no permanent telephone log.

In February of 1979, Mr. M. complained to the State Bar concerning petitioner's conduct of his case and the State Bar began an investigation.

On May 29, 1979, petitioner wrote to Mr. M. informing him that in view of Mr. M.'s "apparent dissatisfaction," he would return the fees paid and the file by separate cover. Petitioner, however, did not immediately return the file or fees. In the meantime, Mr. M. began to search for another attorney to represent him. Mr. M. contacted at least one attorney who indicated that he could not represent Mr. M. without the case file.

---

[4]Petitioner conducted his practice with several other attorneys in Torrance as a joint venture called Attorneys Legal Clinic. Petitioner apparently practiced under his own name at another office in Redondo Beach. Mr. M. retained petitioner through the Attorneys Legal Clinic.

Mr. M. made an appointment to pick up his file from petitioner on June 29, 1979. However, this appointment was cancelled by petitioner's office when Mr. M. called to confirm it.

According to petitioner, on August 8, 1979, Mr. M. came to petitioner's Torrance office without an appointment. The receptionist phoned petitioner at the Redondo Beach office to inform him of Mr. M.'s visit and that Mr. M. had asked about his court date.

Petitioner instructed the receptionist to phone the Compton Municipal Court and find out what would be the earliest date a trial could commence if the matter were filed immediately, service obtained and the suit proceeded uncontested. The court clerk informed the receptionist that October 17, 1979, was the earliest date possible under the designated conditions. Petitioner instructed the receptionist to tell Mr. M. that "if he [did] what he's supposed to do, and the matter . . . were uncontested," trial would occur on October 17.[5] According to petitioner, Mr. M. left the office after talking with the receptionist. Petitioner further testified that, shortly thereafter, Mr. M. called back to ask for written confirmation of what he had been told. Petitioner instructed the secretary to send Mr. M. the "usual letter we send out telling someone their case is going to be heard, but be sure and use language that will mean that it isn't set for hearing. . . ."

A letter dated August 8, 1979, was signed by petitioner and sent to Mr. M. The letter stated that "[t]rial of your case will be on Wednesday, October 17, 1979 at 1:30 in Division Seven of the Compton Municipal Court . . . 280 West Compton Boulevard, Compton." The letter went on to instruct Mr. M. to meet petitioner at the court at 1 p.m. in order "to discuss [the] case and make plans for [the] trial."

Petitioner admitted before the State Bar that on August 8 he had not obtained a trial date nor had he even filed suit on Mr. M.'s behalf. Mr. M. was not questioned about the events of August 8. However, he did testify that he received the letter on August 9, and on August 10 he called petitioner's office for an appointment.

The appointment was set for August 18. Mr. M. testified that on that date he saw petitioner for "two minutes" and requested return of his file for transfer to another attorney. Petitioner did not return the file at that time, nor sign a substitution of attorneys form. Subsequently, on October 2, 1979,

---

[5]Petitioner testified that what Mr. M. was "supposed to do" was to cease vacillating about petitioner going ahead with the suit and to "[c]ome in, sign things, let us file, let us go about our business."

petitioner returned the file to Mr. M. along with the attorney fees and costs which Mr. M. had advanced to him.

### III.

■ Petitioner's sole contention is that the evidence is insufficient to support the findings of misconduct. Petitioner focuses his argument principally on the finding that he misrepresented the status of Mr. M.'s case to his client and to the State Bar. He contends that the letter of August 8, 1979, was not a misrepresentation to his client and must be interpreted in light of the purported oral understanding with Mr. M. that the trial date was merely contingent upon several factors. He further argues that when he reported to the State Bar on the status of Mr. M.'s case by sending a copy of the August 8 letter, he had no intent to make a misrepresentation to the bar.

However, the letter speaks for itself. Without ambiguity it states that trial would occur on October 17 and directs Mr. M. to meet with petitioner at the courthouse on that date. Yet, as petitioner admits, no trial date had been scheduled for October 17. Indeed, suit was never even filed in the matter. Thus, on its face, the letter misrepresents the status of Mr. M.'s case.

In addition, the credibility of petitioner's assertion that both he and Mr. M. understood that the trial date was contingent is undermined by petitioner's own conduct after drafting the letter. Petitioner concedes that Mr. M. had sought the letter as a written confirmation of what the receptionist had told him on August 8. When petitioner signed the letter before it was mailed to Mr. M., he could have corrected any misinformation contained in the letter. Yet, petitioner did not modify the letter to reflect any contingency concerning the October 17 trial date. In addition, petitioner could have obtained his client's signature on the forms necessary for filing suit, then filed suit and sought to obtain a court date consistent with the terms of the letter. Yet, petitioner did nothing in the case until he returned the file and fees to Mr. M. on October 2.

Other than the dubious assertion that this client knew the October 17 trial date was contingent, petitioner offers no reason why the unambiguously false contents of the August 8 letter should not have been found to constitute a misrepresentation.

Equally unconvincing are petitioner's attempts to rebut the findings that he willfully failed to communicate with his client, willfully failed and refused to perform the services for which he had been employed and willfully failed to use reasonable diligence in prosecuting Mr. M.'s claim.

In response to the finding that he failed to communicate with his client, petitioner asserts that Mr. M. was "vexatious" and demanded more attention than was warranted by the routine nature of his case and the low, fixed fee he paid. In addition, petitioner asserts that he failed to prosecute Mr. M.'s case or otherwise perform the services for which he had been retained because Mr. M. was an "on again-off again" client, who persistently vacillated on whether he wished petitioner to proceed with the suit.

The record reflects that Mr. M. often telephoned petitioner's office and visited there whether or not he had an appointment. The record also reveals that Mr. M. may have changed his mind from time to time as to whether he wanted petitioner or some other attorney to proceed with the suit. However, from the time petitioner received the retainer in December of 1977 until his meeting with Mr. M. in June of 1978, petitioner had ample opportunity to file Mr. M.'s action. This is true even if, as petitioner claims, Mr. M. did not furnish the documents necessary to bring the action until the spring of 1978.

Moreover, from their meeting in June of 1978 until February of the next year, when Mr. M. complained to the State Bar, petitioner continued to do nothing towards filing Mr. M.'s lawsuit.

Finally, in May of 1979, petitioner informed Mr. M. that he would return the file and attorney fees because of Mr. M.'s "dissatisfaction." Yet, petitioner retained the file and continued to take no action on Mr. M.'s behalf. This had the effect of precluding Mr. M. from obtaining other counsel to represent him. It was not until October of 1979 that petitioner finally returned the file and fees.

Petitioner's attempt to rationalize his 22 months of inaction as being the result of Mr. M.'s vacillation or vexatiousness simply flies in the face of the factual record. Petitioner fails to recognize that Mr. M.'s conduct during that period was in response to petitioner's own dilatoriness.

With respect to the finding that petitioner gave false and misleading testimony before the hearing panel, petitioner asserts only that after 22 years of the practice of law it would be "ridiculous" for him to attempt to mislead the State Bar and that, from his own criminal law experience, complaining witnesses such as Mr. M. often do not tell the truth. Petitioner's explanation is unpersuasive here in light of a record which clearly belies petitioner's assertion that Mr. M. understood the conditional nature of the October 17 trial date.

The hearing panel and the review department found petitioner's contentions to lack credibility. ■ "It is well settled that in seeking review of

a recommendation of the disciplinary board, a petitioner has 'the burden of showing the findings are not supported by the evidence or are otherwise improper. [Citation.]' [Citation.] 'In meeting this burden, [a] petitioner must demonstrate that the charges of unprofessional conduct are not sustained by convincing proof and to a reasonable certainty. [Citations.]' [Citation.]" (*Goldman* v. *State Bar* (1977) 20 Cal.3d 130, 139 [141 Cal.Rptr. 447, 570 P.2d 463].) ■■■ In this case, petitioner has not met that burden. Therefore, this court finds that petitioner has presented insufficient evidence to refute the findings of the State Bar.

■■■ The hearing panel and the review department differ in their recommendations as to discipline in this case.[6] In determining the discipline to be imposed, however, the review department's recommendation is to be accorded greater weight than the hearing panel's. (*Goldman* v. *State Bar, supra,* 20 Cal.3d at p. 140.)

In addition, petitioner's misconduct is well documented in the record. Petitioner failed to prosecute Mr. M.'s claim, did not communicate adequately with his client, misrepresented the status of the case to his client and submitted misleading testimony to the hearing panel. Although petitioner has no prior disciplinary record, the serious nature of his misconduct warrants imposition of the discipline recommended by the review department. (See *Olguin* v. *State Bar* (1980) 28 Cal.3d 195 [167 Cal.Rptr. 876, 616 P.2d 858]; *Samuelsen* v. *State Bar* (1979) 23 Cal.3d 558 [152 Cal.Rptr. 918, 591 P.2d 15].)

Accordingly, this court orders that petitioner be suspended from the practice of law for a period of two years, that execution of the suspension be stayed and that petitioner be placed upon probation for two years, upon the conditions recommended by the review department in its resolution dated October 20, 1982.[7] This court also orders that petitioner comply with the provisions of California Rules of Court, rule 955, and that the acts specified

---

[6]By a vote of two to one the hearing panel recommended that petitioner be suspended from practice for thirty days, that the suspension be stayed and petitioner placed on probation with certain terms and conditions for one year. The dissenting member of the panel would have imposed private reproval. The review department recommended more severe discipline than the hearing panel because petitioner failed to realize throughout the entire proceedings that he had "committed any act of professional misconduct, despite the record to the contrary."

[7]See footnote 1, *ante,* at page 83.

in subdivisions (a) and (c) of that rule be performed within 14 and 21 days, respectively, after the effective date of this court's order.