[No. S008838. Nov. 30, 1989.]

DONALD J. GOLD, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

Donald J. Gold, in pro. per., for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Marta B. Galeano and Major Williams, Jr., for Respondent.

OPINION

THE COURT.—We review the recommendation of the Review Department of the State Bar Court (hereinafter review department) that petitioner Donald J. Gold be suspended from the practice of law for three years, but that the order of suspension be stayed, and that he be placed on probation for three years subject to certain conditions, including an actual suspension of ninety days.

Gold contends that the 90-day actual suspension recommended by the review department is too harsh and that the hearing referee's recommendation of no actual suspension is more appropriate. After considering the record, we conclude that a period of 30 days' actual suspension is warranted.

FACTS

Donald J. Gold was admitted to the California State Bar on January 14, 1964, and is a sole practitioner in the Los Angeles area. On January 26, 1987, a notice to show cause issued, alleging two counts of misconduct against Gold. Gold has no prior record of disciplinary action.

The matter was heard by a hearing panel on September 2, 3, and 18, 1987, on December 11, 1987, and on March 31, 1988. The review department adopted the hearing panel's findings of fact, which are summarized as follows:

1. *The Garrett Matter.*

In 1968, Janet M. Garrett, who was 14 years old at the time, hired Gold to represent her in an action to obtain compensation for injuries resulting from an automobile accident. Gold told her that she would have to wait until she was 18 years of age before collecting compensation. In 1971, when Garrett was 17 years of age, she unsuccessfully attempted to contact Gold by phone at the place he had told her was his office. In 1982, she told another attorney about her unsuccessful attempts to communicate with

Gold. The other attorney apparently communicated with Gold, who up until that time had not attempted to contact Garrett.

Shortly after Garrett had spoken with the other attorney about her inability to contact Gold, Gold contacted her. Garrett explained that she had been trying to contact him about her case, and Gold arranged a meeting for June 1982. At the meeting Gold represented to Garrett that he had settled her case for $2,000 and that, after deductions for his fees and doctor bills, she would receive about $900.

After the June 1982 meeting, Gold sent Garrett a letter containing a distribution authorization. The letter indicated various disbursements from the $2,000 with the remainder being the amount to which Garrett was entitled. Garrett signed the authorization and returned it to Gold, who thereafter sent Garrett a check in the amount of $907.25.

In reality, Gold never settled Garrett's case and intentionally misrepresented to Garrett that he had done so. Although Gold had indeed filed a lawsuit on Garrett's behalf, the action was ultimately dismissed pursuant to Code of Civil Procedure section 583.310 because Gold failed to bring it to trial within five years. Gold testified at the disciplinary hearing that he was upset with himself for having "blown the statute" and that his actions were motivated by a desire to make Garrett whole. To that end, he paid the $907.25 to Garrett out of his own pocket without ever telling her where the money really came from.[1]

2. *The Rivera Matter.*

Around April 1979, Celia Rivera retained Gold to represent her in obtaining compensation for the wrongful death of her sister, who had died when hit by an automobile while crossing the street. Rivera's primary language is Spanish and she has trouble communicating in English. In August 1981, a secretary at Gold's office who spoke some Spanish apparently indicated to Rivera that Gold had arranged a settlement in the amount of $2,500 and that a check would be sent to Rivera. At oral argument, Gold claimed that though Rivera may have been told that settlement discussions concerning amounts in the neighborhood of $2,500 had occurred, she was never told that these had resulted in a check being actually drawn. In any event, no money was ever paid to Rivera.

Rivera's many attempts to contact Gold about the case were unsuccessful. She was unable to see Gold or in any way contact him personally after

---

[1] The record indicates that two separate settlement offers were made in Garrett's case. One of the offers of settlement was for $550, and the other was for $1,250.

hiring him in April 1979. Between 1980 and 1985 she called Gold's office approximately 25 times. Although she requested that Gold return her calls, he never did. At oral argument, Gold claimed that, since he did not speak any Spanish, he relied on his Spanish-speaking secretary, Rosie, to handle Rivera's calls. After 1981, no person in Gold's employ was able to communicate with Rivera in Spanish owing to Rosie's departure from Gold's office. Rivera's friends also made telephone calls inquiring about the case on Rivera's behalf but were unable to obtain any information. From time to time Rivera and her Spanish- and English-speaking friends even visited Gold's office to inquire about her case. Their attempts were apparently all to no avail, owing partly, Gold claims, to their failure to call or visit him in the afternoons, rather than in the mornings, during which he was often in court.

The hearing panel referee concluded that Gold's conduct in the Garrett and Rivera matters violated Business and Professions Code section 6068, subdivision (m), because Gold failed to "respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services."[2] He determined that this was the only violation supported by the facts and that there were not sufficient facts to support a finding that Gold's actions in the Garrett matter constituted moral turpitude.

The hearing panel referee also concluded that Gold received no financial benefit from his failure to keep in contact with his clients or from his deception of Garrett; that Gold was participating in pro bono legal work during the relevant period of misconduct; that confusion caused by Gold's moving his office resulted in the misplacement of client files and contributed to the delay in communication with clients; that during the relevant period of time Gold's performance was adversely affected by the fact that his son experienced personal difficulties of an unspecified nature; and that two judges from the Workers' Compensation Appeals Board and two attorneys testified that Gold's reputation for honesty and integrity in his work was excellent. Moreover, the hearing panel referee stated that, although Gold made misleading statements to his clients, the statements did not amount to aggravating circumstances because they were an exercise of bad judgment, not part of an intent to defraud.

Based upon the above findings, the hearing panel referee recommended suspending Gold from the practice of law for a period of three years, but

---

[2] All further statutory references are to the Business and Professions Code unless otherwise indicated.

staying the suspension and placing Gold on probation for three years. The terms of probation did not include a period of actual suspension.

By a vote of 11 to 2, the review department concluded that one of Gold's conditions of probation should include actual suspension during the first 90 days of probation.[3] The review department also determined that, in addition to violating section 6068, Gold: (1) violated his oath to support the United States and California Constitutions and to faithfully discharge his duties to the best of his knowledge, in violation of section 6067; (2) withdrew from employment without taking reasonable steps to avoid foreseeable prejudice, in violation of Rules of Professional Conduct, rule 2-111(A)(2);[4] (3) intentionally and recklessly failed to perform legal services competently, in violation of rule 6-101(A)(2); and (4) failed to use reasonable diligence and his best judgment as an attorney to accomplish the purpose for which he was employed, in violation of rule 6-101(2).

The review department also stated that Gold's intentional misrepresentation to Garrett constituted an act of moral turpitude and dishonesty, and questioned whether all claimed mitigating circumstances were supported by the record. For these reasons, the review department concluded that an actual suspension of 90 days was warranted.

### DISCUSSION

Gold contends that his conduct does not warrant a period of actual suspension because he has already suffered substantial emotional, physical and financial losses, which would be unduly compounded if 90 days' actual suspension is imposed. In so arguing, Gold characterizes his conduct in the Garrett matter as an exercise of poor judgment during a time that he was under extreme physical and emotional exhaustion, rather than as moral turpitude and dishonesty. Gold acknowledges his handling of both the Rivera and Garrett matters was improper. But he also asserts that in imposing the 90 days' actual suspension, the review department failed to give adequate consideration to the mitigating circumstances.

■ The primary purposes of sanctions imposed for professional misconduct are the protection of the public, the courts, and the legal profession; the maintenance of high professional standards by attorneys; and the preservation of public confidence in the legal profession. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.3; see also *Mepham* v. *State Bar* (1986) 42 Cal.3d 943, 948 [232 Cal.Rptr. 152, 728

---

[3] The two dissenting referees believed that the recommended discipline was insufficient.

[4] New Rules of Professional Conduct became operative on May 27, 1989; all references are to the former rules.

P.2d 222].) ■ Although we attach significant weight to the discipline recommended by the State Bar Court, we ultimately determine independently the appropriate degree of discipline. (*Smith* v. *State Bar* (1985) 38 Cal.3d 525, 539 [213 Cal.Rptr. 236, 698 P.2d 139].) Moreover, there is no fixed formula in deciding the appropriate discipline. (*Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 919 [101 Cal.Rptr. 369, 495 P.2d 1289].) Rather, this court must balance all the relevant factors. (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 798 [239 Cal.Rptr. 111, 739 P.2d 1279].) ■ After reviewing the record, we conclude that Gold's conduct warrants some period of actual suspension. However, the 90 days' actual suspension recommended by the review department appears to be excessive.

■ Honesty is one of the most fundamental rules of ethics for attorneys. (*Tomlinson* v. *State Bar* (1975) 13 Cal.3d 567, 577 [119 Cal.Rptr. 335, 531 P.2d 1119].) Indeed, an attorney who intentionally deceives his client is culpable of an act of moral turpitude. (See *Kitsis* v. *State Bar* (1979) 23 Cal.3d 857, 865-866 [153 Cal.Rptr. 836, 592 P.2d 323].) Consequently, because the ends of attorney discipline are remedial and not punitive, an act of dishonesty toward a client warrants actual suspension or disbarment from the practice of law even if no harm results to the client. (*Levin* v. *State Bar* (1989) 47 Cal.3d 1140, 1147-1148 [255 Cal.Rptr. 422, 767 P.2d 689]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 917 [180 Cal.Rptr. 831, 640 P.2d 1106]; see also § 6106; Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 2.3.)

■ Although Gold attempts to characterize his conduct in the Garrett matter as an "exercise of poor judgment," the fact remains that he intentionally misrepresented to Garrett that he had settled her case. To this end he manufactured the distribution authorization indicating that Garrett was entitled to $907.25. It is not directly relevant that the actual amount paid to Garrett may have exceeded what her net recovery after disbursements would have been had Gold settled the case pursuant to one of the offers actually made in the case. (Fn. 1 at p. 911, *ante.*) Because Gold misled Garrett into believing that her case had come to a proper conclusion in order to avoid revealing that the statute of limitations had run on her cause of action, Gold's conduct in the Garrett matter warrants a period of actual suspension.

The 90-day actual suspension recommended by the review department, however, is excessive in view of the mitigating circumstances in this case and our prior disposition of a similar matter.

The mitigating circumstances in this case support imposing a 30-day actual suspension. First, Gold received no financial benefit from his failure

to keep in contact with his clients or from his deception of them. In fact, in the Garrett matter he paid the $907.25 out of his own pocket. Moreover, the record reflects that Gold's conduct in the Garrett matter was motivated by a desire to make Garrett whole. That Gold's wrongful conduct was not motivated by a desire for personal enrichment is a significant mitigating circumstance. (See, e.g., *In re Higbie* (1972) 6 Cal.3d 562, 573-574 [99 Cal.Rptr. 865, 493 P.2d 97].)

In addition, Gold has no prior record of discipline over the 25 years that he has practiced law. The absence of a prior disciplinary record is in itself an important mitigating circumstance. (*Chefsky* v. *State Bar* (1984) 36 Cal.3d 116, 132, fn. 10 [202 Cal.Rptr. 349, 680 P.2d 82].) It is a particularly strong mitigating factor in this case, given Gold's many years of practice. (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239].)

This case is similar in many respects to *Wren* v. *State Bar* (1983) 34 Cal.3d 81 [192 Cal.Rptr. 743, 665 P.2d 515]. In *Wren,* attorney John Wren agreed to represent a client in a repossession action. The client repeatedly telephoned and wrote to Wren seeking information on the case. Wren neither returned the phone calls nor answered his correspondence. Wren also misrepresented to his client that a trial date had been set when, in fact, Wren had not obtained a trial date or even filed suit. Moreover, the review department found that Wren attempted to mislead the State Bar by giving false and misleading testimony before the hearing panel. In light of the serious nature of Wren's misconduct, we placed him on probation for two years with certain conditions, including actual suspension from the practice of law for the first forty-five days of the probationary period. (*Id.,* at p. 83, fn. 1.)

The similarity between *Wren* and the case at bar favors imposing a shorter period of actual suspension than that recommended by the State Bar. Like *Wren,* Gold's culpability involves the failure to perform the services for which he was hired, the failure to communicate with his clients and the misrepresentation of the status of a case to the client. Although Gold's misconduct involved two clients rather than one client as in *Wren,* the type and number of incidents of objectionable conduct in the two cases is similar. Nevertheless, the periods of both probation and actual suspension recommended by the review department in Gold's case significantly exceed those imposed by this court in *Wren.*

In light of all the circumstances, the appropriate period of actual suspension in this case is 30 days.

DISPOSITION

Consistent with the above views, it is ordered that petitioner Donald J. Gold be suspended from the practice of law in the State of California for a period of three years; that execution of the order for such suspension be stayed; and that he be placed upon probation for a period of three years subject to the following conditions: 1. During the first thirty (30) days of said period of probation, he shall be suspended from the practice of law in the State of California;

2. During the period of probation, he shall comply with the provisions of the State Bar Act and Rules of Professional Conduct of the State Bar of California.

3. During the period of probation, he shall submit a written report not later than January 10, April 10, July 10, and October 10 of each year or part thereof during which the probation is in effect (provided, however, that if the effective date of probation is less than 30 days preceding any of said dates, he shall file said report on the due date next following the due date after said effective date) to the Office of the Clerk, State Bar Court, Los Angeles, which report shall state that it covers the preceding calendar quarter or applicable portion thereof, certifying by affidavit or under penalty of perjury: (a) in his first report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct since the effective date of said probation;

(b) in each subsequent report, that he has complied with all provisions of the State Bar Act and Rules of Professional Conduct during said period;

(c) provided, however, that a final report shall be filed covering the remaining portion of the period of probation following the last report required by the foregoing provisions of this paragraph certifying to the matters set forth in subparagraph (b) hereof;

4. He shall obtain psychiatric or psychological help from a duly licensed psychiatrist or a clinical psychologist at his own expense and shall furnish evidence to the Office of the Clerk, State Bar Court, Los Angeles, that he is so complying with each report that he is required to render under these conditions of probation; provided, however, that should it be determined by said psychiatrist or psychologist that he does not need psychiatric or psychological help, he may furnish to the State Bar a written statement from said psychiatrist or psychologist so certifying by affidavit or under penalty of perjury, in which event no reports or further reports under this

paragraph shall be required and he shall not be required to obtain such psychiatric or psychological help;

5. Gold shall be referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. He shall promptly review the terms and conditions of his probation with the probation monitor referee to establish a manner and schedule of compliance, consistent with these terms of probation. During the period of probation, he shall furnish such reports concerning his compliance as may be requested by the probation monitor referee. He shall cooperate fully with the probation monitor to enable him/her to discharge his/her duties pursuant to rule 611, Rules of Procedure of the State Bar;

6. During the period of probation, Gold shall maintain on the official membership records of the State Bar, as required by Business and Professions Code section 6002.1, his current office or other address for State Bar purposes and all other information required by that section. He shall report to the membership records office of the State Bar all changes of information as prescribed by said section 6002.1.

7. Except to the extent prohibited by the attorney-client privilege and the privilege against self-incrimination, Gold shall answer fully, promptly and truthfully to the presiding referee of the State Bar Court, his designee or to any probation monitor referee assigned under these conditions of probation at Gold's office or an office of the State Bar (provided, however, that nothing herein shall prohibit Gold and the presiding referee, designee or probation monitor referee from fixing another place by agreement) any inquiry or inquiries directed to him personally or in writing by said presiding referee, designee, or probation monitor referee relating to whether Gold is complying or has complied with these terms of probation.

8. The period of probation shall commence as of the date on which the order of this court becomes effective;

9. At the expiration of said probation period, if Gold has complied with the terms of probation, our order suspending Gold from the practice of law for a period of three (3) years shall be satisfied and the suspension shall be terminated; and

10. Gold shall take and pass the Professional Responsibility Examination given by the National Conference of Bar Examiners within one year from the date upon which this order becomes effective.

This order is effective upon the finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

**LUCAS, C. J.**—I respectfully dissent. The majority opinion fails to accord the review department's recommendation the great weight it deserves. (See *In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728].) Indeed, this principle of deference is evident in the very case the majority cites to support its reduction of the recommended actual suspension. As the majority notes, in *Wren* v. *State Bar* (1983) 34 Cal.3d 81, 90 [192 Cal.Rptr. 743, 665 P.2d 515], we imposed only a 45-day actual suspension; however, in that case the review department recommended only 45 days, and we deferred to the department by adopting this recommendation.

In the present case, petitioner's misconduct is well documented. First, he intentionally deceived Garrett. Although the majority suggests petitioner was motivated solely by a desire to make Garrett whole, this same goal could have been accomplished if petitioner had confessed his negligence and negotiated a settlement with Garrett. The majority evidently does not consider saving one's professional reputation and preventing a possible malpractice action as matters constituting personal enrichment. I would disagree. Furthermore, the facts of the Rivera matter indicate that petitioner's misconduct is not isolated. His neglect and failure to respond to Rivera occurred over a *six-year* period.

I would order petitioner be actually suspended for 90 days in accordance with the review department's recommendation.

Eagleson, J., and Kennard, J., concurred.