[L.A. No. 30663. Feb. 18, 1977.]

GINO D. URBANO, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Edward L. Masry for Petitioner.

Herbert M. Rosenthal, Stuart A. Forsyth and Daniel J. Drapiewski for Respondent.

**OPINION**

**THE COURT.**[*]—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that Gino Urbano be suspended from the practice of law for six months.

Urbano was admitted to practice in 1965. In a prior proceeding we suspended him for one year in 1975 but stayed execution of the suspension and placed him on probation on conditions which included one month's suspension. (In re Urbano, Bar Misc. 3753.) It there appeared that he failed to maintain reasonable control over the handling by his office of clients' funds, thereby permitting the funds to be misappropriated, failed promptly to report to clients receipt of money from settlement of their claims, and in two matters wilfully and without authority appeared as an attorney for a party.

In the instant proceeding Urbano was charged with, among other things, wilfully violating former rules 2 and 3, Rules of Professional Conduct, both of which pertained to solicitation of professional employment. (See Bus. & Prof. Code, § 6077.)[1] The local committee found him culpable in two matters and recommended 60 days' suspension. Upon

---

[*]Before Tobriner, Acting C. J., Mosk, J., Clark, J., Richardson, J., Sullivan, J.,[†] and Wright. J.[‡]

[1]Section 6077 authorizes discipline for a "wilful breach" of the Rules of Professional Conduct.

Former rule 2 provided in part: "A member of the State Bar shall not solicit professional employment by advertisement or otherwise. [¶] Without limiting the generality of the foregoing a member of the State Bar shall not solicit professional employment by [¶] (1) Volunteering counsel or advice except where ties of blood relationship or trust make it appropriate . . . ."

Former rule 3 provided: "A member of the State Bar shall not employ another to solicit or obtain . . . professional employment for him . . . ."

The prohibitions against solicitation are now contained in rule 2-101 and following of the Rules of Professional Conduct.

[†]Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[‡]Retired Chief Justice of California sitting under assignment by the Acting Chairman of the Judicial Council

review, the board adopted the committee's findings, with minor changes, and unanimously recommended six months' suspension.

In May 1972 Mrs. Julia Barcelo was taken to a hospital after being struck by a car. At the hospital a woman, whose last name Mrs. Barcelo did not recall, told the latter that she had a friend who could help Mrs. Barcelo obtain money for her injuries. The woman gave Mrs. Barcelo the business card of Raul Covar. The face of the card bore not only the inscription "Raul Covar, Investigator" and his telephone numbers but also the inscription "Gino Urbano, Law Offices" and his address and telephone number.

Covar came to the hospital to see Mrs. Barcelo and told her he "took care of these matters" and "worked with . . . Urbano." She refused to sign papers presented to her by Covar because she did not understand them and told him to contact her brother-in-law. Covar did so. The brother-in-law thereafter advised Mrs. Barcelo to sign a retainer agreement with Urbano, and it may be inferred that she did so. She subsequently received a letter from Urbano's office thanking her for selecting that office to represent her. Before the accident she did not know Urbano or anyone who knew him.

In July 1972 Edmundo Andrade was involved in an automobile accident and took his damaged car to an automobile dealer. As Andrade parked on the street, a man approached him and asked what had happened. When Andrade replied he had an automobile accident, the man told him "Don't worry, I'll get you in touch with a lawyer's office." After making a telephone call, the man told Andrade that an investigator would call at his home.

The next day Andrade was visited by an investigator, whose name Andrade did not recall. The investigator said that he "was connected with a lawyer's office that would handle [Andrade's] case" and mentioned Urbano's name. At the investigator's request, Andrade signed a document in which he agreed to pay Urbano 33 percent apparently of any recovery. Andrade subsequently received a letter from Urbano's office thanking him for having selected that office to represent him.

Urbano denied knowing how Mrs. Barcelo and Andrade came to his office. He also denied having ever employed Covar but acknowledged having known him since about 1970.

The board found that Urbano wilfully solicited professional employment. Urbano does not attack that finding. Moreover, as above appears, although the evidence is conflicting, there is sufficient evidence to support the finding.

■ Urbano argues that his acts charged in the instant proceeding and those charged in the prior proceeding arose out of a single course of conduct, namely the management of his law office in 1972, and that it violated due process to "prosecute" him a second time for that conduct. The argument lacks merit. The two proceedings involve different acts of misconduct, different clients and different dates. Nothing in the record shows that bringing the instant proceeding violated due process.

■ Urbano also seeks to invoke the rule in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206], relating to multiple prosecutions. The instant proceeding, however, is not a criminal one (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 447 [113 Cal.Rptr. 602, 521 P.2d 858]; *Black* v. *State Bar* (1972) 7 Cal.3d 676, 688 [103 Cal.Rptr. 288, 499 P.2d 968]; *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289]), and the rule in *Kellett* does not apply.

■ Urbano further contends that the board's recommendation of six months' suspension is too severe and that we should instead follow the local committee's recommendation of sixty days' suspension. It is the board's recommendation that is accorded greater weight, and Urbano has not sustained his burden of showing that the recommendation is erroneous or unlawful. (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].)

In *Geffen* v. *State Bar* (1975) 14 Cal.3d 843 [122 Cal.Rptr. 865, 537 P.2d 1225] we suspended an attorney with no prior record for six months for wilfully violating former rules 2 and 3, Rules of Professional Conduct. (See also *Younger* v. *State Bar* (1974) 12 Cal.3d 274 [113 Cal.Rptr. 829, 522 P.2d 5]; *Higgins* v. *State Bar* (1956) 46 Cal.2d 241 [293 P.2d 455].) Each case must, of course, be decided on its own facts.

■ On the facts of this case six months' suspension appears amply warranted. It is therefore ordered that Gino Urbano be suspended from the practice of law for six months; that he comply with rule 955, California Rules of Court, and perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order; and that he pass the Professional Responsibil-

ity Examination within one year after the effective date of this order. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].) This order is effective 30 days after the filing of the opinion.