[S.F. No. 24512. Aug. 18, 1983.]

EDWARD R. FITZSIMMONS, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

James A. Reuben, Reuben, Quint & Valkevich and Charles O. Morgan, Jr., for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Scott J. Drexel for Respondent.

OPINION

**THE COURT.**—Petitioner, Edward R. Fitzsimmons, admitted to practice in California in 1952, was publicly reproved by the State Bar in 1976 for violating a court order to restore funds which he had appropriated without court approval from a probate estate. He is charged in the present proceedings with violating his oath and duties as an attorney (Bus. & Prof. Code, §§ 6103, 6067), wilfully receiving money without adequate records of accounts (*id.,* § 6128, subd. (c)), and improperly disbursing a client's funds without the client's written direction. (Rule 9, Rules Prof. Conduct.)

The State Bar Court Review Department adopted the hearing panel's findings that petitioner's acts were in conscious disregard of his duties as an attorney, and that he showed no contrition and did not admit his responsibility for the underlying conduct.

The State Bar recommends that petitioner be suspended from the practice of law for three years, that execution of the suspension be stayed, and that he be placed on probation with specified conditions which include actual suspension for sixty days.

The essential facts are not in dispute. C was named both executor and sole beneficiary under the last will and testament of J. Several relatives contested the will. During his term as executor C was accused of expending estate funds without a proper authorization. C retained petitioner to represent him both in his personal and in his representative capacity as executor, for which services C agreed to pay petitioner $35,000 as attorney fees. Petitioner settled the will contest, relieving C of any exposure to criminal liability. One of the terms of the settlement authorized a preliminary distribution from J's estate to C in the amount of $73,947 and a statutory attorney fee to petitioner in the sum of $4,500.

Pursuant to the settlement, on March 19, 1973, C withdrew $20,769 from one estate account, and C and petitioner together withdrew the sum of

$28,677 in the form of a cashier check from another estate account, and $24,500 in cash from the same account. C indorsed the second check to petitioner and gave it and the cash to petitioner, instructing him to pay $18,000 in cash to S. The instructions were oral. The remaining sum was paid to petitioner, $31,000 representing the balance of his $35,000 attorney's fees, plus $1,700 for repayment of a loan to C, and $2,000 for expenses incurred by petitioner.

Petitioner placed the $24,500 cash in his vault for the night, and on the following day delivered $18,000 in cash to S, but failed to request or obtain a receipt therefor.

C subsequently requested the State Bar to initiate disciplinary proceedings against petitioner charging that he had misappropriated $18,000 of C's funds. At the hearing C testified that he never authorized the delivery of $18,000 to anyone and S denied having received any of the sum.

The State Bar hearing panel dismissed all charges. Following an appeal by the attorney for the State Bar, the State Bar Court Review Department ordered a de novo hearing before a second hearing panel. This panel found that petitioner's acts were mere "technical errors" and that petitioner was neither contrite nor did he admit responsibility. It recommended the same discipline as that ultimately recommended by the review department, except for restitution which the review department declined to impose. The review department, in turn, adopted the findings of fact of the hearing panel and determined that, while petitioner had not harmed his client, he had caused unnecessary litigation and other problems by his conduct. This department also concluded that petitioner was guilty of wilfully failing to keep appropriate records.

Petitioner does not deny that he (1) failed to obtain written direction for disbursement of $18,000 of his client's funds, (2) delivered the $18,000 to S without obtaining a receipt, and (3) received $2,000 in reimbursement for expenses for which he maintained no substantiating records. However, he maintains that he acted in good faith pursuant to his client's oral direction and neither injured his client nor violated any rules or statutes governing professional conduct.

We examine the various contentions in light of the factual record and the applicable Rules of Professional Conduct.

■ Former rule 9 (now rule 8-101) provided in pertinent part: "Unless the client otherwise directs in writing, [the attorney] shall promptly deposit his client's funds . . . in a bank account separate from his own account

. . . ." In *Peck* v. *The State Bar* (1932) 217 Cal. 47, 51 [17 P.2d 112], we explained that the policy underlying rule 9 was "to provide against the probability in some cases, the possibility in many cases, and the danger in all cases that such commingling will result in the loss of clients' money." It is, therefore, largely irrelevant that an attorney may have violated rule 9 in good faith or without damage to his client. (See *Heavey* v. *State Bar* (1976) 17 Cal.3d 553, 556 [131 Cal.Rptr. 406, 551 P.2d 1238].)

Petitioner clearly violated rule 9 by receiving large amounts of cash from his client without obtaining written directions regarding their disposition, and without promptly depositing them in a trust account. The requirement of a prior *written* direction doubtless serves to avoid costly litigation involving attorney, client, and third parties.

■ Relying on the State Bar's findings that he acted in good faith and without injury to his client, petitioner contends that he did not violate his oath and duties as an attorney (see Bus. & Prof. Code, §§ 6103, 6107) by failing to obtain a receipt from S for the delivery of $18,000 cash. We have consistently held, however, that "Gross carelessness and negligence constitute violations of the oath of an attorney to faithfully discharge his duties to the best of his knowledge and ability, and involve moral turpitude as they breach the fiduciary relationship owed to clients." (*Giovanazzi* v. *State Bar* (1980) 28 Cal.3d 465, 475 [169 Cal.Rptr. 581, 619 P.2d 1005]; accord *Simmons* v. *State Bar* (1970) 2 Cal.3d 719, 729 [87 Cal.Rptr. 368, 470 P.2d 352].)

While "good faith of an attorney is a matter to be considered in determining whether discipline should be imposed for acts done through ignorance or mistake" (*Call* v. *State Bar* (1955) 45 Cal.2d 104, 111 [287 P.2d 761]), the lack of an evil intent does not immunize the attorney's conduct from a finding of moral turpitude. In like fashion, moral turpitude does not require injury to a client. (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 858 [100 Cal.Rptr. 713, 494 P.2d 1257].) Neither petitioner's good faith nor his claim of lack of demonstrable financial harm to the client affects our determination as to petitioner's moral turpitude. Moreover, in the case before us, client C was required to undertake civil litigation, at least partially as a result of petitioner's failure to obtain a written receipt from S.

■ The nub of the State Bar's factual findings is that petitioner failed to maintain adequate records and accounts relative to certain costs charged to clients and that he failed to maintain documentary evidence of his disbursal of client funds. Specifically, these findings establish that petitioner did not give his client receipts for any portion of his attorney fees; nor did he enter into any written agreement regarding his services or his fees; nor

did he obtain a receipt from S when he delivered C's funds to her; nor did he account for, or produce records in support of, costs which he purportedly incurred on behalf of his client. Section 6128 of the Business and Professions Code in relevant part provides: "Every attorney is guilty of a misdemeanor who . . . (c) Willfully receives any money or allowance for or on account of any money which he has not laid out *or become answerable for.*" (Italics added.) Here, C paid petitioner $2,000 for expenses allegedly incurred by petitioner on C's behalf for which petitioner could produce no substantiating records. As we stressed recently, "failure to keep proper books of account, vouchers, receipts and checks is a breach of an attorney's duty to his clients." (*Weir* v. *State Bar* (1979) 23 Cal.3d 564, 576 [152 Cal.Rptr. 921, 591 P.2d 19].) Petitioner's failure to maintain adequate records warrants discipline, and we conclude that the evidence in the record fully supports the review department's assessment of petitioner's misconduct.

## Double Jeopardy

■ Petitioner advances the interesting but unavailing argument that because he was "acquitted" by the State Bar's hearing panel and a dismissal was recommended, the subsequent acceptance of the examiner's "appeal" by the review department's grant of a de novo hearing placed him twice in jeopardy. In this connection he notes the "quasi-criminal" nature of the proceedings and relies upon due process standards generally expressed by us in *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436 [113 Cal.Rptr. 602, 521 P.2d 858]. He acknowledges that in *Urbano* v. *State Bar* (1977) 19 Cal.3d 16 [136 Cal.Rptr. 572, 560 P.2d 1], we held that the due process protection against multiple prosecutions in criminal cases invoked by us in *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206] did not apply to State Bar disciplinary proceedings. He seeks to distinguish *Urbano* on the ground that it involved separate acts which could be separately prosecuted, whereas his own case involves only one act.

The answer to the foregoing argument is that attorneys subject to disciplinary proceedings are not afforded all of those procedural safeguards which are extended to criminal defendants. (See *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 714 [108 Cal.Rptr. 821, 511 P.2d 1173]; *Bernstein* v. *State Bar* (1972) 6 Cal.3d 909, 916 [101 Cal.Rptr. 369, 495 P.2d 1289].) In *Yokozeki, supra,* 11 Cal.3d 436, we put the principle this way: "Proceedings before the State Bar are *sui generis,* neither civil nor criminal in character, and the ordinary criminal procedure safeguards do not apply. [Citations.]" (11 Cal.3d at p. 447.) Whatever distinguishing facts may be found in *Urbano* did not affect our underlying conclusion therein expressed that a bar proceeding "is not a criminal one." (19 Cal.3d at p. 20.) Nor may a

review of bar disciplinary cases be equated with routine criminal appeals. A hearing before the review department does not constitute an "appeal" from a hearing panel's decision. The findings of a hearing panel serve only as recommendations to the review department which may render its own independent findings of fact and conclusions even though they may vary from those of the hearing panel. In turn, first the review department and then this court reach an independent judgment on the record. (See *Bernstein* v. *State Bar, supra,* 6 Cal.3d at p. 916; Bus. & Prof. Code, §§ 6078, 6086.5.)

From the foregoing, we reject petitioner's double jeopardy argument and conclude that he was not denied due process of law.

### DISCIPLINE

Except as previously indicated, petitioner has not challenged the propriety of the sanction recommended by the State Bar, namely, 3 years' probation, stayed upon conditions including 60 days' actual suspension. Although not bound by these recommendations we give them great weight. (See *Cain* v. *State Bar* (1979) 25 Cal.3d 956, 960 [160 Cal.Rptr. 362, 603 P.2d 464].) We recognize petitioner's prior disciplinary record. We neither condone nor justify his derelictions and departure from the record requirements above described. ▇ We have concluded, however, that the ends of justice will be served by the administration of a public reproval.

Petitioner is hereby publicly reproved.

**BIRD, C. J.,** Concurring and Dissenting.—I concur in the judgment of the court. However, I do not agree that petitioner's failure to obtain a written receipt from S amounted to a violation of his oath and duties as an attorney or involved moral turpitude. (See maj. opn., *ante,* at pp. 331-332.)

Evidence presented at the State Bar hearings showed that petitioner specifically asked his client C about whether to obtain a receipt from S. C replied, "No receipt. She'd be insulted [referring to S]. We've been dealing together since 1936, and we've been in a lot of tight conditions [*sic*] together. We're old friends."

Thus, petitioner acted according to his client's express wishes in not asking S for a receipt. Under these circumstances, I fail to see how petitioner's actions amounted to misconduct and/or moral turpitude. I do not believe that any statutory provision, rule of court, or prior decision of this court requires an attorney, over his client's objection, to insult an "old friend" of the client.

**RICHARDSON, J.**—I respectfully dissent from the discipline imposed, and would adopt the recommendation of the State Bar, namely, 3 years' suspension, stayed, and probation with enumerated conditions including actual suspension for 60 days.

Kaus, J., concurred.