[No. S006791. May 3, 1990.]

FRED H. ARM, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

## COUNSEL

Ronald J. Santucci for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., Richard J. Zanassi, Lawrence C. Yee and Stephen J. Strauss for Respondent.

## OPINION

**THE COURT.**—In this proceeding, we consider the recommendation of the Review Department of the State Bar Court (review department) that petitioner Fred H. Arm, who was admitted to the practice of law in Califor-

nia on January 9, 1972, be disbarred. The recommendation is based on conclusions that petitioner, who has been the subject of three prior disciplinary proceedings, violated his duties as an attorney in two additional instances: First, during a juvenile court proceeding he misled the court by failing to disclose he was about to be suspended from the practice of law for a 60-day period that encompassed some of the dates being considered for further hearing of the matter, in violation of Business and Professions Code sections 6068, subdivision (d) and 6106,[1] and former rule 7-105(1) of the State Bar Rules of Professional Conduct.[2]

Second, he commingled his funds with those in a client trust account by failing to withdraw the funds in the account belonging to him within a reasonable time after his interest in them became fixed, thereby violating former rule 8-101(A)[3] and subjecting himself to discipline under section 6103 (violation of oath or duties as attorney).

As will be explained, we have concluded that petitioner's misconduct in the present proceeding is not sufficiently egregious to warrant disbarment. On the other hand, the combination of petitioner's previous and present transgressions demonstrates a need for subtantial discipline to protect the public and the courts, and to preserve public confidence in the legal profession. Those ends will be adequately served, however, by putting petitioner on probation for five years, conditioned on actual suspension from the practice of law for eighteen months.

---

[1] All statutory references are to the Business and Professions Code unless otherwise indicated. Section 6068 provides: "It is the duty of an attorney to do all of the following: . . . [¶] (d) To employ, for the purpose of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law . . . ." Section 6106 provides: "The commission of any act involving moral turpitude . . . whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension . . . ."

[2] All references to rules are to the State Bar Rules of Professional Conduct unless otherwise indicated. The present rules took effect on May 27, 1989, after the transgressions involved here. References to former rules are to those in effect when petitioner's conduct occurred.

Former rule 7-105 provided: "In presenting a matter to a tribunal, a member of the State Bar shall: [¶] (1) Employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and shall not seek to mislead the judge, judicial officer or jury by an artifice or false statement of fact or law . . . ." The substance of this provision now appears in rule 5-200.

[3] Former rule 8-101(A) provided: "All funds received or held for the benefit of clients by a member of the State Bar . . . shall be deposited in one or more identifiable bank accounts labelled 'Trust Account', 'Client's Funds Account' or words of similar import, . . . and no funds belonging to the member of the State Bar . . . shall be deposited therein or otherwise commingled therewith except as follows: . . . [¶] (2) Funds belonging in part to a client and in part presently or potentially to the member of the State Bar . . . . must be deposited therein and the portion belonging to the member of the State Bar . . . must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed . . . ." The substance of this provision now appears in rule 4-100(A).

## I.  FACTS

### A.  PRIOR DISCIPLINE

Petitioner was admitted to the practice of law in January 1972. Since then, and prior to this proceeding, he has been disciplined by this court three times.

#### 1.  *False Statement to a Police Officer*

In May 1975, petitioner falsely identified himself as a deputy sheriff when he was stopped for a traffic violation. He pled guilty to violating Vehicle Code section 31 (giving false information to a police officer), a misdemeanor. The State Bar Disciplinary Board concluded that the offense did not involve moral turpitude but did involve other conduct warranting discipline. As a result, we publicly reproved petitioner in September 1976.

#### 2.  *Accepting Employment Adverse to Former Client*

In October 1978, Frank Tracy retained petitioner to attempt recovery of $30,000 lost in an investment scheme. Petitioner recovered some of this money, after which Tracy paid him and terminated his services. In April 1979, petitioner obtained an attorney to represent Tracy's daughter in contested conservatorship proceedings against Tracy. He furnished the attorney with financial information about Tracy, filed a declaration supporting appointment of the daughter as conservator, and falsely represented to the court that he, petitioner, had never had an attorney-client relationship with Tracy. After the daughter was appointed conservator, petitioner, despite having confidential information about Tracy's financial affairs, represented a plaintiff in a lawsuit against Tracy and others on a promissory note. The State Bar Court found that petitioner willfully accepted employment adverse to a former client in violation of former rule 4-101, committed acts of dishonesty (§ 6106), and violated his oath and duties as an attorney. (§§ 6067, 6068, 6103.) In September 1983, we placed petitioner on probation for one year, with no actual suspension.

#### 3.  *Unfair Business Transaction With Clients*

In August 1984, on petitioner's recommendation, Mr. and Mrs. Wilt paid $10,000 for a limited partnership interest in an enterprise that was to make and sell redwood burl tables. Petitioner misrepresented the venture's profitability and the extent of his own personal financial involvement, and failed to disclose to the Wilts that another investor, whom he had previous-

ly represented, had been a compulsive gambler and the subject of a criminal investigation.

The Wilts lost their investment, and obtained a civil fraud judgment against petitioner. The review department found that petitioner had entered into a business transaction with clients that was not fair and reasonable to them, failing to disclose facts necessary for them to make an informed decision and failing to advise them to seek the advice of independent counsel, in violation of former rule 5-101. (See rule 3-300.) In mitigation, it found no evidence that petitioner received any money from the business; it also found that he had asked the State Bar for an ethics opinion regarding his failure to disclose the other investor's background. In January 1985, we placed petitioner on suspension for three years, with actual suspension of sixty days effective February 1, 1985.

## B. PRESENT ACTS OF MISCONDUCT

### 1. *Failure to Disclose Suspension From Practice*

On January 2, 1985, this court issued the most recent of its three prior disciplinary orders against petitioner. The order stated it was effective February 1, 1985, and included a provision that petitioner be actually suspended from the practice of law "for a period of 60 days from the effective date of this order." The order omitted, however, the provisions set forth in rule 955 of the California Rules of Court (rule 955), under which suspended attorneys may be required to notify their clients and opposing counsel of the suspension.

The hearing at which petitioner was charged with misleading the court took place on Wednesday, January 23, 1985, nine days before the effective date of his suspension, in the San Diego County Juvenile Court. The present record includes a partial reporter's transcript of that hearing.[4] Petitioner appeared as counsel for the mother of the two minor children involved in the juvenile court proceeding. Also appearing were the father's attorney, Larry Anderson, and an attorney for the minors, Jeffrey Reilly. Presiding was Juvenile Court Referee Gilbert Smith.

The transcript shows that petitioner first sought immediate consideration of a recommendation favorable to his client ("reunification with the moth-

---

[4] The juvenile court transcript was not initially transmitted to this court because the State Bar Court apparently treated it as having been marked for identification only. At the outset of the State Bar hearing, however, petitioner's counsel offered the transcript in evidence; it was marked exhibit A; the State Bar examiner stated he "would have no objection" and "would stipulate" to its admission. Even though the State Bar referee did not then expressly receive the exhibit in evidence, he repeatedly referred to it in his findings. Accordingly, we deem it part of the State Bar record.

er"), but that the father's attorney asked for "an opportunity to review the proposal and to bring evidence as to the dispositional phase, if possible." The court said it would "set a date for disposition" that could be agreed upon by counsel.

Petitioner suggested Friday, January 25, 1985. The minor's attorney mentioned he had a trial that day and suggested Friday, February 1, to which the father's attorney agreed. Petitioner, however, said he would "not be able to make it February 1st," and asked for an earlier date. The minor's attorney had a problem with an earlier date and proposed either February 8 or February 14.

Petitioner then spoke up: "Your Honor, this is a little unusual, but *it could be the 1st*; however, I would have to check tomorrow. *Perhaps I can have it on the 1st.*" (Italics added.) The court proposed setting February 1 and 8 as alternative dates. The court then allowed the father's attorney to make a telephone call, following which he asked for February 8. Petitioner said, "I can't make it, your Honor." After further colloquy, the court suggested February 7, to which petitioner responded: "Can't make it either, your Honor . . . . Have to get somebody else to cover for me." But the court declared: "The issue here is far too important to delegate professional responsibilities at this time." The minor's attorney then suggested February 14, which the court started to consider when petitioner asked to approach the bench. The court replied, "Of course," whereupon, according to the transcript, "[a] bench conference [was] held at this time." Immediately thereafter the court set the matter for January 31, 1985, one day before petitioner's suspension was to begin.

At the State Bar hearing petitioner testified that upon approaching the bench he talked to the juvenile court referee outside the presence of other counsel, a circumstance he admitted was "very unusual." He testified he told the referee he would not be available in February or March because he had "a problem with the Bar." He said he deliberately withheld information of his suspension from opposing counsel, Anderson, for fear that the fact would be used to his client's disadvantage.

The juvenile court referee testified that petitioner did not disclose he would be suspended from practice during February and March, but he was not certain what reason petitioner gave for inability to appear during that period. According to the referee, the fact of petitioner's forthcoming suspension would have been material to the selection of a date for continuance, but he could not say how it would have affected the selection. He also said it would have been highly unusual to confer with petitioner at the bench without the presence of other counsel.

Based on this evidence, the State Bar Court concluded that petitioner had violated section 6068, subdivision (d), and former rule 7-105(1) (fns. 1 & 2, *ante*) "by misleading a judge and other attorneys involved in a Juvenile Court proceeding," and that his conduct involved moral turpitude (§ 6106).

### 2. *Commingling of Funds*

The notice to show cause, as amended, charged that petitioner paid a personal debt with a check drawn on a client trust account, thereby commingling or willfully misappropriating client trust funds.

In June 1983, Haze and Noel Rufo retained petitioner to represent them in a dispute over the purchase of a pharmacy. Petitioner obtained a money judgment in April 1985, which was satisfied between then and July 1986 through petitioner's additional efforts.

Petitioner's ledger card, on which he kept a record of trust account transactions with the Rufos, showed the following: In December 1985, he credited the Rufos with payments of $4,900 and $11,000 received in satisfaction of their judgment. In that same month, he withdrew $4,225 for attorney fees, and in March 1986 he disbursed $11,000 to the Rufos. There were subsequent disbursements for costs, leaving a balance of $316 on July 3, 1986. On July 15, 1986, there was a credit of $1,600 for the last payment on the judgment; the next day, petitioner paid $882 to the Rufos, leaving them with a trust account balance of $1,034. On September 16, 1986, there was a disbursement of $1,000 to "Jeffrey Reilly (Atty Fees)" and a transfer to petitioner's general account for attorney fees of $34. These transactions left the Rufos with a zero balance in the trust account.

The $1,000 payment to Attorney Reilly was made in connection with a civil rights suit against Reilly and other defendants brought by petitioner in federal court on behalf of his client in the juvenile court matter discussed earlier. On August 21, 1985, the court dismissed the suit and, as a sanction under rule 11 of the Federal Rules of Civil Procedure, required petitioner to pay $2,772 to defendant Reilly for attorney fees. At a debtor's examination before a federal magistrate on September 16, 1986, this sanction was reduced to $1,675, of which petitioner was ordered to pay $1,000 immediately, or in a relatively short time, and to pay the balance of $675 by the end of October. Petitioner thereupon issued a check for $1,000 to Reilly, drawn on petitioner's clients trust account.

In explanation of the issuance of this check, petitioner testified as follows: Immediately following the July 15 and 16, 1986, transactions shown on the Rufos' trust account ledger card, he and the Rufos had not yet decided

whether to use their balance of $1,034 for paying his fee or to keep it on hand for use in further proceedings to recover the attorney fees incurred in collecting on the judgment. At that time, the Rufos owed petitioner about $3,700 on his fee, but he had agreed with them that the fee would be reduced. Sometime between July 15 and September 16, 1986, the Rufos and petitioner decided against further proceedings and also agreed that the Rufos' remaining trust account balance of $1,034 should be paid to him for his fee. At the September 16 hearing, the federal magistrate was insistent on immediate payment, and petitioner did not then have the $1,000 in his personal account.

Based on this evidence, the State Bar Court concluded that petitioner had commingled funds, in violation of former rule 8-101(A)(2) (now rule 4-100(A)(2)).

### 3. *Preparing Stipulation While Under Suspension*

The notice to show cause included a charge that petitioner practiced law while on suspension, February 1 to April 1, 1985. On February 27, 1985, petitioner wrote, on his letterhead, to Larry Anderson, opposing counsel in the juvenile court matter discussed earlier. The letter enclosed a proposed "Stipulation for Mandatory Settlement Conference and Trial Date," signed by petitioner as the attorney for his client. Petitioner testified that he prepared the stipulation at the insistence of Anderson and was afraid that, if he did not do so, Anderson would take advantage of petitioner's suspension from practice, to the prejudice of petitioner's client. Petitioner also testified that he and his State Bar monitor, Mr. Boyko, had discussed what activities would be permissible during the period of suspension, and petitioner did not believe that arranging for rescheduling of matters, by such means as the proposed stipulation, violated the suspension order.

Petitioner was not allowed to testify as to what oral guidance he had received from Boyko because the State Bar examiner's hearsay objection to such testimony was sustained. Admitted, however, was a letter from Boyko to the State Bar, recalling that he had advised petitioner that performing a "mere ministerial function," such as responding to a client's request for information in the files, would not violate the suspension order. He also told petitioner that "there was no hard and fast line" between ministerial acts and the practice of law, "that it was a matter of using common sense and that as long as he did not give legal advice, or charge legal fees for services of a non-professional nature, that there should be no problem."

The hearing panel did not find that petitioner had practiced law while under suspension. But it listed the facts surrounding the preparation and

transmission of the stipulation as "Evidence in Aggravation," and said that but for the letter from State Bar Monitor Boyko, the panel would have found petitioner culpable of practicing law while under suspension. The panel concluded that by the stipulation and letter, petitioner "was attempting to appear professional in his relations with opposing counsel who was not advised as to" petitioner's suspension.

## C. DISCIPLINARY PROCEEDINGS

Based on the evidence discussed above, the hearing panel recommended that petitioner be disbarred. On May 25, 1988, the review department adopted (with minor alterations) the findings of facts and conclusions of the hearing panel. It, too, recommended that petitioner be disbarred.

## II. DISCUSSION

■ We exercise our independent judgment in determining the appropriate discipline, but in doing so we give great weight to the recommendation of the State Bar Court. (*Slavkin* v. *State Bar* (1989) 49 Cal.3d 894, 904 [264 Cal.Rptr. 131, 782 P.2d 270]; *Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].) We also look for guidance to the Standards for Attorney Sanctions for Professional Misconduct of the Rules of Procedure of the State Bar, division V (standards; all further references to cited standards are to this source), and accord these standards great weight, though they are not binding upon us. (*Segal* v. *State Bar* (1988) 44 Cal.3d 1077, 1087 [245 Cal.Rptr. 404, 751 P.2d 463].) The burden is upon petitioner to demonstrate error in the State Bar's findings or conclusions (§ 6083, subd. (c)), but he may satisfy that burden by showing that the charges are not sustained by convincing proof and to a reasonable certainty. (*Maltaman* v. *State Bar* (1987) 43 Cal.3d 924, 932 [239 Cal.Rptr. 687, 741 P.2d 185].)

■ With respect to the issue of disclosure of petitioner's forthcoming suspension, we agree with the review department there is clear and convincing evidence that during the juvenile court proceeding petitioner not only failed to disclose his upcoming suspension but affirmatively represented he might be able to appear on February 1, 1985, the effective date of his suspension.[5]

---

[5] As the dissent points out, there was testimony before the hearing panel by Juvenile Court Referee Smith and opposing counsel Anderson that petitioner had also said he could not appear in February 1985 because he had other legal matters pending. But Smith's testimony was highly equivocal, and the statement attributed to petitioner by Anderson does not appear in the partial reporter's transcript of the juvenile court hearing. Neither the hearing panel nor the review department found that petitioner had made this additional statement.

The review department's determination of misconduct is too broad, however, insofar as it purports to be based on the deception of counsel as well as the court. Although the misleading of counsel may call for discipline (*Monroe* v. *State Bar* (1961) 55 Cal.2d 145, 152 [10 Cal.Rptr. 257, 358 P.2d 529]; *Coviello* v. *State Bar* (1955) 45 Cal.2d 57, 65-66 [286 P.2d 357]), the State Bar properly does not now rely on such conduct as an independent ground for disciplining petitioner, because the notice to show cause had charged him with misleading only the court and was not amended in that regard. (See *Rose* v. *State Bar* (1989) 49 Cal.3d 646, 654 [262 Cal.Rptr. 702, 779 P.2d 761]; *Gendron* v. *State Bar* (1983) 35 Cal.3d 409, 420 [197 Cal.Rptr. 590, 673 P.2d 260].)

The impropriety of misleading counsel is relevant, however, to an argument that petitioner advances as justification for concealing the fact of his suspension during the juvenile court proceeding. Petitioner argues that because the disciplinary order did not require him to notify his client and opposing counsel pursuant to rule 955 that he was about to be suspended, it was proper for him to conceal his suspension from opposing counsel in order to protect his client against legal maneuvers during the period of his inability to practice.

Petitioner's argument stems from a basic misconception of the nature of a suspension order. Such an order disqualifies the attorney not only from practicing law but also from holding himself or herself out as entitled to practice during the suspension period. (*In re Cadwell* (1975) 15 Cal.3d 762, 771 [125 Cal.Rptr. 889, 543 P.2d 257]; std. 1.2(h).) Petitioner's duty toward his client did not entitle him to knowingly create, or leave undisturbed, a false impression that he would be representing the client during the period of suspension.

Petitioner maintains that it was in his client's interest that he continue representing her in the juvenile court proceeding after the suspension period rather than substituting new counsel during that period. An order for 60 days' actual suspension that omits the provisions of rule 955 does not necessarily call for the suspended attorney's complete withdrawal from all pending matters. Absent withdrawal, however, the attorney has a duty to take whatever steps are necessary to assure that the client is not prejudiced by the hiatus in representation. Thus, arrangements may have to be made with a licensed lawyer to provide interim services, such as making court appearances and handling communications with other counsel, during the suspension period. But protection of the client's interests does not necessitate or justify concealing the fact of the attorney's suspension from practice.

Petitioner contends there was no reason to disclose his forthcoming suspension to the juvenile court because the continuance date finally selected

preceded the date on which the suspension was to go into effect. Petitioner points out that the court rejected his suggestion of "get[ting] somebody else to cover for me," declaring that the matter was "far too important to delegate professional responsibilities at this time." Therefore, petitioner argues, the court would not have knowingly set the hearing for a date within petitioner's suspension period.

Petitioner's concealment of the reason for his unavailability, however, cannot be justified on the theory that the juvenile court would have made the same determination if it had been told the truth. ■ In granting continuances, a trial court must exercise its discretion with due regard to all the interests involved. (*In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1169 [208 Cal.Rptr. 345]; see 7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 10, pp. 26-27.) If the ground advanced for continuance is the unavailability of a party's attorney, the reasons for that unavailability must be carefully considered. (See, e.g., *County of San Bernardino v. Doria Mining & Engineering Corp.* (1977) 72 Cal.App.3d 776 [140 Cal.Rptr. 383]; Cal. Standards Jud. Admin., § 9.) ■ Thus, the true reason for petitioner's unavailability, that is, his forthcoming suspension, was a factor for the court, not petitioner, to consider in setting the hearing date. It does not matter whether the court, in the exercise of its discretion, would or would not have been willing to set the hearing for January 31, 1985 (the date actually chosen), if it had known that for the immediately following 60 days petitioner would be under suspension and therefore unable to continue the representation of his client. We conclude the record supports the review department's determination that petitioner misled the court in violation of section 6068, subdivision (d), and former rule 7-105(1) (now rule 5-200).

■ We also conclude that the evidence clearly and convincingly supports the findings of the State Bar Court with respect to the commingling of the Rufos' trust fund. The State Bar Court determined that petitioner had failed for a substantial period of time to withdraw his own funds from the trust account, thereby violating the requirement of former rule 8-101(A)(2) (now rule 4-100(A)(2)) that the portion of the trust account belonging to the attorney be "withdrawn at the earliest reasonable time after the [attorney's] interest in that portion becomes fixed." Petitioner was unable to say, or to document, just when his interest in the $1,034, credited to the Rufos after the trust account transactions of July 15 and 16, 1986, became fixed. We accept the State Bar Court's implied finding that this occurred well before petitioner withdrew that amount from the trust account in mid-September.

■ "[C]ommingling is committed when a client's money is intermingled with that of his attorney and its separate identity lost so that it may be used

for the attorney's personal expenses or subjected to the claims of his creditors. [Citations.]" (*Clark* v. *State Bar* (1952) 39 Cal.2d 161, 167-168 [246 P.2d 1].) The rule against commingling is absolute. Former rule 8-101(A) (now rule 4-100(A)) requires that "[a]ll funds received or held for the benefit of clients by [an attorney] . . . be deposited in one or more identifiable bank accounts labelled 'Trust Account,' 'Client's Funds Account' or words of similar import," and that "[n]o funds belonging to the [attorney] . . . be deposited therein or otherwise commingled therewith . . . ." As we said in *Doyle* v. *State Bar* (1982) 32 Cal.3d 12, 22-23 [184 Cal.Rptr. 720, 648 P.2d 942]: "The rule absolutely bars use of the trust account for personal purposes, even if client funds are not on deposit." ▆▆▆ Petitioner's failure to comply with the requirement of withdrawing his funds from the trust account at the earliest reasonable time after his interest in them became fixed, as required under former rule 8-101(A)(2), "subjected the client's funds to the very risks that the commingling rule is designed to protect against." (*Black* v. *State Bar* (1962) 57 Cal.2d 219, 226 [18 Cal.Rptr. 518, 368 P.2d 118].)

Moreover, the evidence shows that petitioner's misconduct resulted in the commingling of his funds with the funds of *all* the clients for whom he maintained the trust account. Although the State Bar found that the $1,000 check was drawn on the "Fred H. Arm Clients Noel and Haze Rufo Trust Account," the check itself shows on its face that it was drawn on the "Fred H. Arm Clients Trust Account." The bank statements for the account, covering monthly periods from July 11 to October 10, 1986, reflect transactions in addition to those recorded on the Rufos' trust account ledger card. Thus, the bank statement that records payment on the $1,000 check shows a "lowest balance" of $12,024.53, even though the ledger card shows that the Rufos' interest was reduced to zero during that period.

There is no evidence, however, that petitioner's issuance of the $1,000 check resulted in any misappropriation of funds. No reason appears for disbelieving petitioner's uncontradicted testimony, corroborated by the contemporaneous written record on his ledger card, that as of the time he drew the check the Rufos had agreed he was entitled to the $1,000 for his fees.

▆▆▆ The State Bar also contends petitioner failed to render proper accounts to his clients for their trust account funds. Such accountings are required by former rule 8-101(B)(3) (now rule 4-100(B)(3)), and failure to provide them is a ground for discipline. (*McCray* v. *State Bar* (1985) 38 Cal.3d 257, 270 [211 Cal.Rptr. 691, 696 P.2d 83]; *Fitzsimmons* v. *State Bar* (1983) 34 Cal.3d 327, 332 [193 Cal.Rptr. 896, 667 P.2d 700].) But no such dereliction was charged in the notice to show cause, or stated in the State Bar Court's conclusions of law, as a basis for disciplining petitioner. The

State Bar Court did find that petitioner had "made no showing that he rendered billings or statements on a regular basis other than his testimony that he did from time to time mail to the clients copies of an account or ledger sheet." Petitioner, however, had no reason to present additional proof of his rendering proper accounts in the absence of notice that he was being charged with failure to do so.

Following the hearing panel's recommendation that petitioner be disbarred, petitioner filed a request with the review department to reject the recommendation. He attached to the request a declaration by his client, Mrs. Rufo, who corroborated petitioner's testimony and provided copies of his billings. The State Bar urges us to ignore this declaration because petitioner could have called the declarant as a witness at the hearing. But it was the State Bar examiner who had the burden of proving nonperformance of petitioner's duties to his clients. "[I]nadequacies in the attorney's response to disciplinary proceedings do not necessarily remedy gaps in affirmative proof supporting the essential findings." (*McCray* v. *State Bar, supra*, 38 Cal.3d 257, 263-264.) Though this court generally declines to consider exculpatory evidence not presented to the hearing panel and thus immune to cross-examination (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217]; *Coppock* v. *State Bar* (1988) 44 Cal.3d 665, 683 [749 P.2d 1317]), Mrs. Rufo's declaration, regardless of its accuracy, demonstrated the availability of a centrally involved witness the State Bar examiner chose not to call.

■ We also concur with the State Bar Court's determination that petitioner's preparation and transmission of the stipulation and letter to Attorney Anderson while under suspension may be considered as a factor in aggravation. The stipulation and letter were apparently a continuation of petitioner's misguided efforts at the juvenile court hearing to conceal his suspension from opposing counsel. As we explained in that regard, the suspension order prohibited petitioner not only from practicing law but also from holding himself out as licensed to practice during the suspension period. If his client needed protection against actions that might be taken by opposing counsel during petitioner's suspension, it was up to petitioner to help the client obtain another lawyer's services for that purpose.

■ In recommending disbarment, both the hearing panel and the review department emphasized petitioner's record of prior discipline. The standards call for disbarment of an attorney who, like petitioner, is found culpable of misconduct and has been disciplined at least twice before, "unless the most compelling mitigating circumstances clearly predominate." (Std. 1.7(b).) ■ Generally, "we will not reject a recommendation arising from application of the Standards unless we have grave doubts as to

the propriety of the recommended discipline." (*Lawhorn* v. *State Bar* (1987) 43 Cal.3d 1357, 1366 [240 Cal.Rptr. 848, 743 P.2d 908].) ▉ Here, we do have grave doubts and conclude that disbarment is not warranted because compelling mitigating circumstances clearly predominate with respect to petitioner's misconduct adjudged in this proceeding.

Standard 1.2(b) lists aggravating circumstances calling for increased discipline, and standard 1.2(e) lists mitigating circumstances calling for lesser discipline. Leniency for petitioner's present misconduct is indicated by two factors reflected in those aggravating and mitigating circumstances: lack of significant resulting harm and absence of bad faith.

None of petitioner's present transgressions "harmed significantly a client, the public or the administration of justice." (Std. 1.2(b)(iv).) His wrongful concealment from the juvenile court of his forthcoming suspension did not result in any expectation that petitioner would appear in court during the suspension period, or in the taking of any adverse steps against his client while he was unable to represent her. The juvenile court referee was unable to say how he would have acted differently if he had known the truth.

Similarly, no demonstrable actual harm resulted from petitioner's failure to withdraw his fee promptly from the trust account, or from his payment of a personal debt by a check on that account. There was no misappropriation and no evidence of dissatisfaction on the part of any client.

Finally, the proposed stipulation and letter that petitioner sent to opposing counsel during his suspension was never acted upon. Although these circumstances by no means justify petitioner's misconduct, they substantially mitigate its seriousness. This lack of significant resulting harm is a mitigating circumstance (std. 1.2(e)(iii)) and eliminates any need to consider the aggravating or mitigating circumstances pertaining to rectification, atonement, and cooperation with victims (stds. 1.2(b)(iii), 1.2(b)(v), 1.2(b)(vi), 1.2(e)(v), 1.2(e)(vii)).[6]

Absence of bad faith is another mitigating factor. (See stds. 1.2(b)(iii) [bad faith as aggravation], 1.2(e)(ii) [good faith as mitigation].) In conceal-

---

[6]Under the standards, the extent of harm is significant not only as mitigation or aggravation but also in assessing the seriousness of petitioner's misconduct apart from his prior disciplinary record. Culpability of misleading a court calls for "actual suspension or disbarment depending upon the extent to which the victim of the misconduct is harmed or misled and depending upon the magnitude of the act of misconduct and the degree to which it relates to the [attorney's] acts within the practice of law." (Std. 2.3.) The minimum discipline prescribed for commingling *without misappropriation* is only three months of actual suspension (std. 2.2(b)), whereas misappropriation of entrusted funds calls for disbarment or, if compelling mitigating circumstances clearly predominate, actual suspension for at least one year (std. 2.2(a)).

ing his suspension from the juvenile court, and in sending a proposed stipulation to opposing counsel while he was under suspension, petitioner mistakenly believed he was serving his client's interests. Furthermore, no overreaching or attempt at misappropriation appears to have accompanied the act of commingling of client trust funds. Such circumstances lessen the seriousness of an attorney's misconduct. (*Ames* v. *State Bar* (1973) 8 Cal.3d 910, 921 [106 Cal.Rptr. 489, 506 P.2d 625] [attorneys acted in what they thought were clients' best interests]; *In re Higbie* (1972) 6 Cal.3d 562, 573 [99 Cal.Rptr. 865, 493 P.2d 97] [attorney's wrongdoing not motivated by personal enrichment].)

Against these mitigating aspects of the misconduct found in the present proceeding must be weighed the aggravation inherent in petitioner's record of prior discipline. The State Bar attempts to find a common thread in this and the past three disciplinary proceedings from which to urge that petitioner's present misdeeds require the increased discipline usually imposed for a "habitual course of conduct" (*McMorris* v. *State Bar* (1983) 35 Cal.3d 77, 85 [196 Cal.Rptr. 841, 672 P.2d 431]) or "a repetition of offenses for which an accused has previously been disciplined" (*Marsh* v. *State Bar* (1934) 2 Cal.2d 75, 80 [39 P.2d 403]).

In fact, each set of facts underlying the various proceedings is quite different from the others. First, the State Bar publicly reproved petitioner for falsely telling a traffic officer he was a deputy sheriff. Next, he was put on one year's probation for assisting in conservatorship proceedings, and bringing an action on a promissory note, against a former client from whom he had acquired confidential financial information. (There was an incidental finding that in the conservatorship proceeding petitioner had concealed from the court his professional relationship to the client, but he was not separately charged with misleading the court.) In the third proceeding, he was put on probation for three years and actually suspended for sixty days for inducing a client to invest in a business venture, in which petitioner and another client were involved, on terms that were not fair and reasonable and failed to disclose material facts.

Notwithstanding the differences in the types of misconduct prompting these disciplinary orders, each of them has "provided [petitioner] an opportunity to reform his conduct to the ethical strictures of the profession" (*Arden* v. *State Bar* (1987) 43 Cal.3d 713, 728 [239 Cal.Rptr. 68, 739 P.2d 1236]). Despite these opportunities to learn from his mistakes, petitioner has again committed misdeeds that, regardless of the absence of immediately resulting harm, necessarily reflect a further lack of understanding by petitioner of his professional responsibilities.

As already explained, the State Bar Court's recommendation of disbarment is excessive in light of the compelling mitigating circumstances of the misconduct found in this proceeding. Nonetheless, a lengthy period of probation, including substantial actual suspension from practice, followed by passage of the Professional Responsibility Examination, is necessary for the protection of the public, the courts, and the legal profession.

### DISPOSITION

It is ordered that petitioner Fred H. Arm be suspended from the practice of law for a period of five years from the date on which this decision becomes final, and that execution of the order of suspension be stayed and petitioner be placed on probation, with a probation monitor referee to be assigned pursuant to rules 610 and 611 of the Rules of Procedure of the State Bar, for a period of five years, subject to the following conditions: (1) for the first eighteen months of the probationary period, he shall be actually suspended from practicing law in the State of California; (2) he shall comply with the provisions of the State Bar Act and Rules of Professsional Conduct of the State Bar of California; and (3) he shall file with the State Bar such reports concerning his compliance with the conditions of probation as directed by the probation monitor referee.

We further order that during the period of petitioner's actual suspension he take and pass the Professional Responsibility Examination (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 890-891 [126 Cal.Rptr. 793, 544 P.2d 929]), and that he comply with the provisions of paragraph (a) of rule 955 of the California Rules of Court within 30 days after the date of this order, and file with the Clerk of the Supreme Court within 15 days thereafter an affidavit showing compliance as provided for in paragraph (c) of this rule.

By this order petitioner is referred to the Department of Probation, State Bar Court, for assignment of a probation monitor referee. He shall promptly review the terms and conditions of his probation with that referee to establish a manner and schedule of compliance with the terms of probation. He shall cooperate fully with the referee to enable the referee to discharge his duties pursuant to rule 611 of the Rules of Procedure of the State Bar.

At the expiration of the period of probation, if he has complied with the terms of probation, the order suspending petitioner from the practice of law for a period of five years shall be satisfied and the suspension terminated.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

**EAGLESON, J.**—I dissent from the majority's decision to reject the State Bar Court's *unanimous* recommendation of disbarment and to impose five years' probation conditioned upon eighteen months' actual suspension.

This is petitioner's fourth trip through the State Bar disciplinary system. The majority insists that the acts underlying each proceeding are "different." (Maj. opn., *ante*, p. 780.) However, petitioner's past and present violations all contain the element of deceit.

In 1974, two years after he was admitted to the bar, petitioner obtained a sizable settlement for his clients and induced them to invest the money in a business venture. He *misrepresented* its profitability and the extent of his own personal financial involvement. Petitioner also failed to disclose the questionable character of other investors. The clients eventually obtained a fraud judgment against him. (Bar Misc. No. 4830.) (This matter resulted in a sixty-day suspension order which became effective February 1, 1985, and is relevant to misrepresentations made by petitioner in one of two matters at issue here.)

One year later, in 1975, petitioner *falsely identified* himself as a deputy sheriff during a routine traffic stop. He pled guilty to a misdemeanor violation of giving false information to a police officer (Veh. Code, § 31). (Bar Misc. No. 3809.)

In 1979, after having practiced without incident for only four years, petitioner furnished confidential information about a former client for use against him in a contested legal proceeding, *misrepresented to the court* that he had no attorney-client relationship with the former client, and filed a separate lawsuit against the former client on behalf of another client. (Bar Misc. No. 4623.)

The State Bar Court now finds petitioner culpable of misconduct in two new matters: (1) *misleading the court* in a 1985 juvenile court matter; and (2) failing in 1986 to withdraw his funds from the Rufos' client trust account within a reasonable time after his interest therein became fixed. The majority correctly sustains the State Bar Court's findings that these acts violated Business and Professions Code sections 6068, subdivision (d), and 6103, and former rules 7-105(1) and 8-101(A) of the Rules of Professional Conduct. The State Bar Court also properly found that petitioner violated Business and Professions Code section 6106 (dishonesty and moral turpitude as grounds for suspension or disbarment). (See maj. opn., *ante*, p. 768.)

However, the majority errs in characterizing the first incident as a mere "failure to disclose" information. (Maj. opn., *ante*, pp. 768, 770.) The ma-

jority acknowledges that petitioner "affirmatively" misrepresented to the juvenile court referee that he might be able to appear on February 1, 1985, even though he knew our suspension order made him per se unavailable for court appearances for 60 days beginning that day. (Maj. opn., *ante*, p. 774.) The State Bar testimony of two witnesses (Referee Smith and opposing counsel Anderson) also suggests petitioner said he could not appear in February 1985 because he had other legal "matters" pending. Because such statements were knowingly false when made, we assume that petitioner acted with an intent to deceive. (*Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 513 [153 Cal.Rptr. 24, 591 P.2d 47]; see also *Pickering* v. *State Bar* (1944) 24 Cal.2d 141, 144-145 [148 P.2d 1].)

As conceded by the majority, petitioner is a presumptive threat to the legal community. (Maj. opn., *ante*, p. 778.) The Standards for Attorney Sanctions for Professional Misconduct recommend disbarment for attorneys with "two prior impositions of discipline" unless "the most compelling mitigating circumstances" exist. (Rules Proc. of State Bar, div. V, std. 1.7(b) (Standards).) Recently, on March 19, 1990, this court stated: "Our principal concerns in attorney disciplinary proceedings are protecting the public, preserving public confidence in the legal profession, and maintaining high professional standards for attorneys. [Citation.] . . . '[W]e will not reject a recommendation arising from application of the Standards unless we have grave doubts as to the propriety of the recommended discipline.' [Citation.]" (*In re Billings, ante,* 358, 365-366 [267 Cal.Rptr. 319, 787 P.2d 617].) The majority opinion pays insufficient heed to these bedrock principles.

In rare cases, we have not imposed disbarment until the attorney has suffered *three* prior disciplines. (See, e.g., *Kent* v. *State Bar* (1987) 43 Cal.3d 729, 737-738 [239 Cal.Rptr. 77, 739 P.2d 1244]; *Arden* v. *State Bar* (1987) 43 Cal.3d 713, 727-728 [239 Cal.Rptr. 68, 739 P.2d 1236].) However, the majority cites no case imposing a sanction *less* than disbarment upon an attorney who is undergoing his *fourth* disciplinary proceeding for misconduct consisting largely of *dishonesty*. Such conduct often calls for the strictest disciplinary measures, and has sometimes resulted in disbarment for attorneys with *no* prior record. (See, e.g., *In re Rivas* (1989) 49 Cal.3d 794, 800-802 [263 Cal.Rptr. 654, 781 P.2d 946]; *In re Lamb* (1989) 49 Cal.3d 239, 245-249 [260 Cal.Rptr. 856, 776 P.2d 765]; see also *Carter* v. *State Bar* (1988) 44 Cal.3d 1091, 1100 [245 Cal.Rptr. 628, 751 P.2d 894].)

The majority insists petitioner is a special case. It claims that two "mitigating" facts raise "grave doubts" as to the recommended discipline: (1) no "significant resulting harm"; and (2) no "bad faith." (Maj. opn., *ante*, pp. 779-780, citing Std. 1.2(e).) In the juvenile court matter, the majority cred-

its petitioner with avoiding any actual representation of his client while on suspension. In the Rufo matter, the majority opinion notes that he did not misappropriate money or dissatisfy the clients.

Such facts are not "compelling" within the meaning of Standard 1.7(b). There is no evidence that petitioner acted under unusual pressure, or that his conduct was aberrational. The only argument he raises to mitigate the first incident is that the 60-day suspension order did not require him to notify anyone of the discipline (see Cal. Rules of Court, rule 955), and that his client could have been harmed if opposing counsel had felt free to make legal maneuvers during the suspension period. However, as the majority persuasively responds, petitioner's "duty toward his client did not entitle him to knowingly create, or leave undisturbed, a false impression that he would be representing the client during the period of suspension. [¶] . . . Absent withdrawal . . . , the attorney has a duty to take whatever steps are necessary to assure that the client is not prejudiced by the hiatus in representation." (Maj. opn., *ante*, p. 775.) Here, it appears that petitioner's only response to the suspension order was to "knowingly create" such a "false impression."

The majority opinion will be read to mean that disbarment is not warranted because petitioner only told a "little white lie" in court, and did not steal money from his clients. These fortuities do not negate his intentional and deceptive conduct. Over a 12-year span, petitioner has manifested a chronic insensitivity to elementary ethical standards imposed upon all who hold the privilege of practicing law. On two prior occasions, he has victimized clients. Because of his consistent pattern of dishonesty, I would adopt the proposed discipline of disbarment.

Lucas, C. J., and Scoville (Harmon G.), J.,* concurred.

---

*Retired Presiding Justice, Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chairperson of the Judicial Council.