Filed 3/25/14  Ramos v. Oatey CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HARMONY RAMOS et al., | D061479, D061849, D062109 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2010-00057106-CU-BC-NC) |
| DIANE OATEY, | |
| Defendant and Appellant. | |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Affirmed.

Diane Oatey in pro per., for Defendant and Appellant.

Komanapalli Massey and Mark Allen Massey; Gartenberg Gelfand Hayton & Selden, Carolyn Ann Pearson, Jason Bluver and Shirley Hayton, for Plaintiffs and Respondents.

Diane Oatey, appearing in propria persona, appeals from orders: (1) dismissing her first amended cross-complaint; (2) entering a default judgment on a cross-complaint against her; (3) granting a good faith settlement motion; and (4) enforcing a settlement agreement against her. We reject her arguments and affirm the orders.

GENERAL FACTUAL AND PROCEDURAL BACKGROUND

Defendant Extraordinary Conceptions (EC) is an agency that offers surrogate parent services. Defendants Stephanie Caballero and Mario Caballero (together the Caballeros) owned and operated EC. (EC and the Caballeros are collectively referred to as the EC Defendants.) In 2008, plaintiffs Harmony Ramos and Vidal Ramos (together the Ramos) entered into a gestational parenting agreement (the agreement) through EC whereby Harmony agreed to act as a surrogate parent for Oatey, the intended mother.

In March 2010, Harmony gave birth and relinquished the baby to Oatey. The Ramos later sued the EC Defendants and Oatey for, among other things, breach of the agreement. Generally, the Ramos alleged that the EC Defendants and Oatey breached the agreement by refusing to pay their expenses. As detailed below, this appeal pertains to a number of law and motion matters decided by the trial court.

DISCUSSION

I. *General Legal Principles*

Before tackling any substantive issues that may have been raised by Oatey, we address some general legal principles that govern our review of this appeal. Although Oatey is representing herself in this litigation, the rules of civil procedure apply with equal force to self-represented parties as they do to those represented by attorneys. (*Rappleyea v.*

2

*Campbell* (1994) 8 Cal.4th 975, 984-985.) A litigant "appearing in propria persona, . . . is entitled to the same, but no greater, consideration than other litigants and attorneys." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.) For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) "We are not bound to develop appellants' arguments for them. [Citation.] The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

## II. *Dismissal of Oatey's First Amended Cross-Complaint*

A. Facts

Oatey and the EC Defendants filed separate cross-complaints for indemnification, among other causes of action. Oatey filed a first amended cross-complaint after the trial court sustained the Ramos' demurrer. The EC Defendants moved to strike and demurred to Oatey's first amended cross-complaint. Before the trial court ruled on these matters, the Ramos settled their claims against the EC Defendants for $25,000, and the trial court determined that the settlement was entered into in good faith under Code of Civil Procedure section 877.6. (Undesignated statutory references are to the Code of Civil Procedure.) In light of the settlement agreement, the EC Defendants moved to dismiss Oatey's first amended cross-complaint.

On October 14, 2011, the trial court granted the motion to strike as to Oatey's claims for equitable and comparative indemnity, contribution and declaratory relief based on its finding that the settlement between the EC Defendants and the Ramos was entered into in good faith. (All further date references are to 2011 unless otherwise indicated.) It granted Oatey leave to amend her claims for conversion, intentional interference with contract and breach of written contract. It sustained the demurrer to Oatey's claims for fraud, breach of fiduciary duty and intentional infliction of emotional distress without leave to amend, stating that Oatey failed to show how these claims could be amended to set forth valid causes of action.

On December 22, the EC Defendants filed an ex parte application to dismiss Oatey's first amended cross-complaint based on her failure to timely amend. On December 28, the trial court granted the EC Defendants' request to dismiss Oatey's first amended cross-complaint based on her failure to timely file a second amended cross-complaint. On June 20, 2012, the court entered a judgment of dismissal on Oatey's first amended cross-complaint.

B. Analysis

Upon request, a trial court has the authority to dismiss a complaint after a demurrer to a pleading is sustained with leave to amend and the plaintiff fails to amend the pleading within the time allowed by the court. (§ 581, subd. (f)(2); Cal. Rules of Court, rule 3.1320(h) ["A motion to dismiss the entire action and for entry of judgment after expiration of the time to amend following the sustaining of a demurrer may be made by ex parte application to the court under . . . section 581(f)(2)."].)

4

In her opening brief, Oatey complains the trial court should have allowed her leave to file a second amended cross-complaint. In her reply brief, Oatey cites numerous documents she filed with the trial court *before* the court issued its October 2011 ruling on the EC Defendants' demurrer and motion to strike and granted her leave to file a second amended cross-complaint. The trial court did not dismiss Oatey's first amended cross-complaint until December 28. Oatey does not explain why she could not file a second amended cross-complaint between the date of the court's ruling in October and the date the court ultimately dismissed her first amended cross-complaint in December. The trial court acted within its discretion in dismissing Oatey's first amended cross-complaint as she failed to file a second amended cross-complaint despite being given ample time to do so.

Oatey next claims the trial court abused its discretion when it sustained the demurrer to her claims for fraud, breach of fiduciary duty and intentional infliction of emotional distress without leave to amend. Oatey, however, failed to provide any argument or legal authority supporting her position; accordingly, we treat these contentions as waived. (*In re Marriage of Falcone & Fyke*, *supra*, 164 Cal.App.4th at p. 830.)

### III. *Default on the EC Defendants' Cross-Complaint*

A. Facts

On January 18, the EC Defendants served Oatey their cross-complaint by mail. On May 12, the EC Defendants requested entry of default on their cross-complaint. On May 25, the trial court entered a default against Oatey on the EC Defendants' cross-complaint against her.

On August 11, the court issued a minute order noting that Oatey had been served, but had not yet responded to the cross-complaint filed by the EC Defendants. It noted that the EC Defendants had not yet requested a default and granted Oatey 10 days leave to file a response. The following week, the court corrected its August 11 minute order to reflect that a default was entered against Oatey on May 25, and that Oatey was required to file a noticed motion seeking relief from the default.

On November 28, Oatey filed a noticed motion seeking to set aside the default and default judgment. Oatey argued that the cross-complaint had not been properly served, the declaration regarding its service was false and the cross-complaint was not entered on the court's register of actions until May 14. In the meantime, the EC Defendants requested that a default judgment be entered against Oatey on their cross-complaint in the sum of $25,000, plus costs and postjudgment interest. On December 28, the court entered a default judgment against Oatey in the amount of $25,000 plus costs of $1,425. It stayed execution of the judgment pending a hearing on Oatey's motion to set aside the default and default judgment.

The trial court later denied Oatey's motion. It found that Oatey had been properly served, that she failed to show how the proof of service was fraudulent, there was no irregularity in the filing of the cross-complaint and any delay in the computer entry by the court's business office was due to a court backlog. Even assuming Oatey relied on the register of actions for notice of the cross-complaint, it found Oatey had "ample opportunity" to file a response once the entry was made.

6

B.  Analysis

Although Oatey's arguments are somewhat difficult to follow, she contends that the trial judge violated the code of judicial conduct by forcing her to sign a substitution of attorney and, as a result, she was not served with the cross-complaint and was unable to respond to the cross-complaint in a timely manner.  She also contends that counsel for the EC Defendants misled her during settlement talks and this resulted in her failure to file a responsive pleading.

As a preliminary matter, we will consider only the points raised in the trial court. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [arguments raised for the first time on appeal are deemed forfeited].)  Our review of Oatey's motion to set aside the default shows she did not raise the arguments she is now making below.  Accordingly, we deem these arguments forfeited.

Below, Oatey argued that the default should be set aside because the EC Defendants never properly served her with the cross-complaint and the declaration regarding service of the cross-complaint was false.  We disagree.

Section 428.60 provides that where a party has appeared in the action a cross-complaint must be served upon the party's attorney, or upon the party if the party has appeared without an attorney, "in the manner provided for service of a summons or in the manner provided by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2 of this code."  (§ 428.60, subd. (2).)  Service by mail is expressly authorized.  (§ 1012; see generally, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2010) ¶ 6:571 at p. 6-148 (rev. # 1 2011).)

7

Here, Oatey generally appeared in this action when she demurred to the Ramos complaint in August 2010. (§ 1014.) Although Oatey denies receipt, the EC Defendants served Oatey their cross-complaint by mail on January 18 at her address of record. On May 12 and November 15, respectively, the EC Defendants served Oatey by mail at her address of record with a request to enter default and application for default judgment.

Oatey is deemed to have received such information pursuant to the civil presumption that a letter correctly addressed and properly mailed is presumed to have been received. (Evid. Code, § 641 [letter correctly addressed and properly mailed presumed received in ordinary course of mail].) The presumption exists "unless and until evidence is introduced which would support a finding of its nonexistence." (Evid. Code, § 604; *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 421.) Oatey, however, presented absolutely no evidence to cast doubt on the presumed fact that she received the cross-complaint, request for default and application for default judgment. She also failed to present evidence showing she failed to timely answer the cross-complaint based on mistake, inadvertence, surprise, or excusable neglect. (§ 473, subd. (b).) Accordingly, the trial court did not err when it denied Oatey's motion to set aside the default and default judgment.

IV. *Good Faith Settlement Finding Between the EC Defendants and the Ramos*

A. Facts

On June 24, the EC Defendants and the Ramos entered into a settlement agreement whereby they would pay the Ramos $25,000 without admitting liability. On July 18, the EC Defendants served their application for a good faith settlement determination and proposed

8

order by certified mail, return receipt requested. On August 12, the court signed an order determining that the settlement was made in good faith under section 877.6.

On December 22, Oatey filed an opposition to the application of the EC Defendants to dismiss her cross-claims pursuant to the good faith settlement determination. The trial court deemed the application to be a motion to contest the settlement and denied it as untimely.

B. Analysis

Oatey appeals from the trial court's order finding that the settlement between the EC Defendants and the Ramos was in good faith under section 877.6. The EC Defendants respond that Oatey is appealing from a nonappealable order. Acknowledging that there is a split of authority on this issue, the EC Defendants also contend that the order should be affirmed because Oatey failed to timely object below.

California courts are split as to whether a writ petition filed under section 877.6, subdivision (e) (section 877.6(e)) is the sole means of challenging a trial court's order that determines a settlement by one or more defendants was made in good faith and dismisses a cross-complaint filed by a nonsettling defendant. (*Main Fiber Products, Inc. v. Morgan & Franz Ins. Agency* (1999) 73 Cal.App.4th 1130, 1135-1136 [timely writ petition under section 877.6(e) is the exclusive means for a nonsettling defendant to challenge the merits of a determination that the settlement by another defendant was made in good faith]; *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 499 [same]; compare, *Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413, 1423-1426 [writ review "preferable" but determination also reviewable on appeal from final

9

judgment following summary denial of writ petition]; *Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 955-956 [availability of writ review, or the summary denial of a writ petition, does not preclude an appeal from a good faith settlement after a final judgment]. We need not take a position on this issue because, assuming the order is appealable, we would reject Oatey' arguments on their merits.

Oatey argues that the trial court improperly approved the settlement before the 25-day statutory period expired for her to contest the settlement and that the court did not have the authority to approve the settlement because it contained a confidentiality clause. We disagree.

"Where parties to a lawsuit settle 'in good faith before verdict or judgment' the settling tortfeasor is released from all liability for any contribution to any other tortfeasors and the claims against the nonsettling tortfeasors will be reduced by the amount of the contribution paid for the release of the settling tortfeasor." (*L.C. Rudd & Son, Inc. v. Superior Court* (1997) 52 Cal.App.4th 742, 747.) Subdivision (a)(2) of section 877.6 provides an expedited procedure whereby a party to a settlement may apply for an order determining the settlement was made in "good faith" by serving specified documents by certified mail, return receipt requested. Once this is done, a nonsettling party may contest the "good faith" of the settlement by serving and filing a motion within 25 days after the specified documents were mailed. (§ 877.6, subd. (a)(2).) If no contest is made within the 25-day period, "the court may approve the settlement." (*Ibid.*) This expedited procedure, however, cannot be used where the settlement agreement contains a confidentiality clause regarding the case or the terms of the settlement. (*Ibid.*) The reason for this prohibition is

10

that a nonsettling defendant cannot meet the burden of showing that the settlement was not in good faith without viewing the contents of the settlement agreement. (*Mediplex of California, Inc. v. Superior Court* (1995) 34 Cal.App.4th 748, 749.)

As a threshold matter, while Oatey is correct that the settlement agreement between the EC Defendants and the Ramos contains a confidentiality clause, the clause pertains to keeping the agreement confidential from the public, not Oatey. Here, the EC Defendants attached the written settlement agreement to their application for good faith settlement. (*Mediplex of California, Inc. v. Superior Court*, *supra*, 34 Cal.App.4th at pp. 751-752 [nonsettling party must be allowed to review settlement agreement if it is to meet its burden showing settlement was not in good faith].) Accordingly, we reject Oatey's argument that the expedited procedure of subdivision (a)(2) of section 877.6 did not apply.

We also reject Oatey's argument that the trial court approved the settlement before the 25-day period for her to contest the settlement expired. On July 18, the EC Defendants mailed the settlement application and supporting documents to Oatey by certified mail, return receipt requested. Oatey concedes that she received the documents on July 27. Assuming without deciding that the 25-day period to contest the settlement commenced when Oatey received the documents on July 27, the time to contest the settlement expired on August 22. Oatey, however, untimely filed her opposition to the EC Defendants' application on December 22. Although a minute order denied Oatey's challenge to the good faith of the settlement as untimely based on a filing date of August 25, the result is the same—the trial court properly denied the challenge as untimely.

11

V. *Enforcement of Settlement Between Oatey and the Ramos'*

A. Facts

In October 2011, Oatey entered into a settlement agreement wherein she agreed to dismiss her cross-complaint as to the Ramos in consideration of the Ramos dismissing their complaint as to Oatey. After Oatey failed to dismiss her cross-complaint, the Ramos moved to enforce the settlement under section 664.6. Thereafter, Oatey filed an ex parte application to take the hearing off calendar and requesting an order that counsel for the Ramos be disqualified. Oatey declined the court's invitation to have her ex parte papers considered as opposition to the Ramos' motion. Accordingly, the court considered the motion to enforce the settlement as being unopposed. The trial court later granted the motion. After Oatey failed to file the dismissal, the court ordered Oatey's first amended cross-complaint dismissed with prejudice as to the Ramos.

B. Analysis

Oatey argues that the settlement agreement entered into between her and the Ramos' should be rescinded because: (1) counsel for the EC Defendants was ineligible to practice law when he filed the motion to enforce the settlement; (2) it was not entered into in good faith; and (3) the signed settlement agreement did not reflect her understanding of the settlement terms. We reject her contentions.

Generally, "[n]o person shall practice law in California unless the person is an active member of the State Bar." (Bus. & Prof. Code, § 6125.) We take judicial notice of the records of the California State Bar posted on its official Web site and note Oatey is correct that the counsel for the Ramos that signed the settlement agreement and the motion to

12

enforce the settlement was ineligible to practice law from December 29, 2011 to January 17, 2012. (Evid. Code, § 452, subd. (h) [allows the court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy"]; *In re White* (2004) 121 Cal.App.4th 1453, 1469, fn. 14 [taking judicial notice of State Bar Web site]; see <http://members.calbar.ca.gov/fal/Member/Detail/180804>, as of March 19, 2014.)

A suspension order disqualifies an attorney from practicing law. (*Arm v. State Bar* (1990) 50 Cal.3d 763, 775.) Counsel for the Ramos was eligible to practice law when he and Oatey signed the settlement agreement in October 2011, but ineligible when counsel moved to enforce the settlement agreement in early January 2012. (*Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court* (1998) 17 Cal.4th 119, 128 [the practice of law includes appearing on behalf of another in adjudicative proceedings].)

When it denied Oatey's request to take the motion to enforce the settlement agreement off calendar, the trial court noted that Oatey provided no authority that this is the proper remedy for the unauthorized practice of law. Similarly here, Oatey provided no authority that the settlement agreement between her and the Ramos should be rescinded for this reason. (*Nelson v. Avondale Homeowners Assn.*, *supra*, 172 Cal.App.4th at p. 862 [arguments presented without citation to authority are treated as waived].)

A trial court is authorized to enter judgment based on a settlement agreement. (§ 664.6.) A settlement agreement is a contract to which the legal principles generally applicable to contracts apply. (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206

13

Cal.App.4th 724, 732.)  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  (*Founding Members of the Newport Beach Country Club v. Newport Beach County Club, Inc.* (2003) 109 Cal.App.4th 944, 955.)  In construing a contract, a party's subjective intent is immaterial.  (*Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 133.)  Instead, the objective meaning of the words is controlling.  (*Ibid.*)

Oatey has also failed to show that the settlement agreement was not entered into in good faith, voluntarily, or that it did not reflect her understanding of the settlement terms.  The written settlement agreement is about six pages long.  Therein, Oatey agreed "that the terms of the Agreement are fully understood and voluntarily accepted" by her.  Although Oatey argues, among other things, that she did not fully understand the agreement and that the terms of the settlement were not explicitly defined, she failed to cite any evidence supporting these contentions.  Accordingly, the trial court did not err when it granted the Ramos' motion to enforce their settlement agreement with Oatey.

DISPOSITION

The orders are affirmed.  Respondents are entitled to recover their costs on appeal.

McINTYRE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


McDONALD, J.

14